United States Court of Appeals,

Fifth Circuit.

No. 93-1967.

Thomas E. ALEXANDER, Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee.

Feb. 15, 1995.

Appeal from the United States District Court for the Northern District of Texas.

Before GARWOOD, JOLLY and STEWART, Circuit Judges.

GARWOOD, Circuit Judge:

Plaintiff-appellant Thomas Alexander (Alexander) sued defendant-appellee United States (the Service) for a refund of federal income taxes assessed and collected after the expiration of the limitations period on assessment. The Service and Alexander filed cross-motions for summary judgment. The district court granted the Service's motion and entered final judgment against Alexander 829 F.Supp. 199, who now appeals. We reverse.

## Facts and Proceedings Below

Alexander was a limited partner in Columbia Building, Ltd. (Columbia). In his timely 1984 tax return, Alexander included income attributable to his partnership interest. On May 16, 1988, the Service mailed Alexander a notice of final partnership administrative adjustment (FPAA). The FPAA informed him that adjustments had been made at the partnership level to Columbia's return for 1984, resulting in an increase in tax liability on Alexander's individual return for the same year.

1

Along with the FPAA, the Service enclosed a copy of IRS Form 870-P, then known as a "Settlement Agreement for Partnership Adjustments."[1]  The FPAA informed Alexander that his signature on the 870-P form would constitute an offer to enter into a "binding settlement" to accept the FPAA adjustments.  The 870-P form itself notified Alexander that the settlement agreement, if executed, could be avoided only upon a showing of "fraud, malfeasance, or misrepresentation of fact" and, further, barred any "claim for refund or credit based on any change in the treatment of partnership items."  On May 18, 1988, Alexander signed the 870-P form and returned it to the Service, which accepted the settlement offer and, one year later, assessed a deficiency.  Alexander paid the deficiency, including interest.

Over a year after making this payment, Alexander learned of a suit brought by another Columbia partner to challenge the FPAA adjustments made to the firm's 1984 partnership return.  In that proceeding, the Service, after initially defending the adjustments, conceded that the statute of limitations for assessing any deficiency had expired on April 15, 1988.  The tax court thereafter entered judgment for the Columbia partners.  *Columbia Building, Ltd. v. Commissioner,* 98 T.C. 607, 1992 WL 101165 (1992).  Upon learning of the Service's concession, Alexander realized he had paid the government a deficiency the assessment of which was time-barred.

---

[1]The Service has since changed the name of this form to "Agreement to Assessment and Collection of Deficiency in Tax for Partnership Adjustments."

Alexander timely filed a claim for refund with the Service on November 20, 1990. Ultimately, the Service disallowed the refund claim, and Alexander brought this suit in the district court below. Both parties filed cross-motions for summary judgment. The district court ruled for the Service, concluding that it had jurisdiction over the claim and that the parties' settlement agreement contractually precluded Alexander's refund action. Alexander appeals.

## Discussion

We review an order granting summary judgment *de novo. Abbott v. Equity Group, Inc.,* 2 F.3d 613, 618 (5th Cir.1993), *cert. denied,* --- U.S. ----, 114 S.Ct. 1219, 127 L.Ed.2d 565 (1994). Summary judgment is appropriate where the record discloses that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In reviewing a grant of summary judgment, we apply the same standard as that to be used by the district court in ruling on the motion. *E.E.O.C. v. Boeing Services International,* 968 F.2d 549, 553 (5th Cir.1992).

I. The Statutory Backdrop

In 1982, Congress enacted the Tax Equity and Fiscal Responsibility Act (TEFRA), Pub.L. No. 97-248, 96 Stat. 324, to improve the auditing and adjustments of income tax items attributable to partnerships. TEFRA provides auditing and litigation procedures which have shifted the Service's focus from the individual partner to the partnership as a whole, thus creating

3

an important distinction between partnership and nonpartnership items. The law creates partnership-level procedures to deal with partnership items, that is, to determine "the tax treatment of items of partnership income, loss, deductions, and credits ... at the partnership level in a unified partnership proceeding rather than in separate proceedings with the partners." H.R.Conf.Rep. No. 97-760, 97th Cong., 2d Sess. at 600 (1982-2 Cum.Bull. at 662).

Under TEFRA, when the Service wishes to adjust the treatment of partnership items on a partnership return, it must mail the partners a notice of a final partnership administrative adjustment (FPAA). Initially, and in order to toll the three-year statute of limitations on assessment, the Service must mail the FPAA to the firm's designated tax matters partner. Within sixty days of this mailing, the Service must also send copies of the FPAA to the remaining, so-called notice partners.

In this case, although the corporate partner to whom the timely FPAA was sent had previously been the tax matters partner, bankruptcy had deprived it of that designation before the FPAA was issued. Temp.Treas.Reg. § 301.6231(a)(7)-1T(1)(4) and § 301.6231(c)-7T(a). The suspension provision in section 6229(d) was therefore ineffective, and the statute of limitations on assessment expired a month before the Service mailed the FPAA to Alexander and the remaining partners.

II. The Jurisdictional Issue

District courts generally have subject matter jurisdiction

over refund claims.  28 U.S.C. §§ 1340, 1346(a)(1).[2]  In its motion for summary judgment and on appeal, the Service has argued that section 7422 of the Internal Revenue Code deprives the district court of jurisdiction over Alexander's refund claim.  Section 7422 provides that "[n]o action may be brought for a refund attributable to partnership items."  I.R.C. § 7422(h).  The critical inquiry is whether the refund action here is attributable to partnership or nonpartnership items.[3]  If the refund is attributable to partnership items, section 7422(h) applies and deprives the court of jurisdiction.  If, on the other hand, the refund is attributable to nonpartnership items, then section 7422(h) is irrelevant, and the general grant of jurisdiction is effective.

In this case, the refund claimed was at one time attributable to partnership items, that is, to the adjustments called for in the FPAA to the Columbia partnership return.  The question is whether these items remained partnership items after Alexander and the Service entered into a settlement agreement.  Because the purpose of section 7422(h) is evidently to prevent an individual partner's refund action from interfering with the partnership-level

---

[2]Section 1346(a)(1) gives the district court original jurisdiction over any "civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected...."  28 U.S.C. § 1346(a)(1).

[3]Section 6231(a)(3) defines partnership items as "any item required to be taken into account for the partnership's taxable year ... to the extent regulations ... provide that ... such item is more appropriately determined at the partnership level than at the partner level."  I.R.C. § 6231(a)(3).  Nonpartnership items are all other items.  I.R.C. § 6231(a)(4).

determination of partnership items, that bar becomes unnecessary when the partnership-level proceeding has in some sense concluded. Accordingly, section 6231 calls for the conversion of partnership items into nonpartnership items on the happening of certain events. Relevant to this case is section 6231(b)(1)(C), which converts partnership items into nonpartnership items when "the Secretary enters into a settlement agreement with the partner with respect to such items."  I.R.C. § 6231(b)(1)(C).

Therefore, execution of a valid settlement agreement between Alexander and the Service would convert partnership items into nonpartnership items, thereby lifting the jurisdictional bar of section 7422(h).  Because the Service does not dispute the validity of the agreement, the conversion was effective when the settlement was made.  Accordingly, the district court had jurisdiction over Alexander's refund action.

Although we believe that the intersection of sections 6231(b)(1)(C) and 7422(h) clearly resolves this jurisdictional question, we note a consistent holding in our recent decision of *Treaty Pines Investment Partnership v. Commissioner of Internal Revenue,* 967 F.2d 206 (5th Cir.1992), a case which the Service attempts to distinguish.  At issue in *Treaty Pines* was jurisdiction over determining partnership items, as opposed to jurisdiction over refund actions.  With regard to determining partnership items, the conversion of partnership items into nonpartnership items denies, rather than grants, subject matter jurisdiction.  That the jurisdictional effect of the conversion in *Treaty* was different

from that here, however, does not detract from the case's critical premise that a conversion indeed occurred. Having merely identified a difference in the *consequences* of conversion, the Service offers no statutory or policy-based rationale to explain why this distinction matters.

We therefore hold that the district court had subject matter jurisdiction over Alexander's claim to a refund.

III. The Contractual Issue

The Service does not dispute that the amounts Alexander paid were assessed and collected after the expiration of the relevant limitations period on assessment. Under the Code, payments made after the limitations period are defined as "overpayments" and, as such, must be refunded. I.R.C. § 6401 (" "overpayment' includes that part of the amount of the payment of any internal revenue tax which is assessed or collected after the expiration of the period of limitation"); I.R.C. § 6402(a) ("[i]n the case of any overpayment, the [Service] ... shall ... refund any balance"); *see Cohen v. United States,* 995 F.2d 205, 207 (Fed.Cir.1993) (holding that the payment of a time-barred tax liability constitutes an overpayment subject to mandatory refund); *Diamond Gardner Corp. v. Commissioner,* 38 T.C. 875, 881, 1962 WL 1164 (1962) (same).[4]

The right to a refund, however, may be waived. A party, by

_____

[4]We reject the Service's contention that Alexander makes a new argument on appeal in claiming he is due a refund under section 6401. Alexander has at all times claimed he is due a refund for taxes assessed and collected after the expiration of the limitations period. His failure below to cite sections 6401 and 6402 is not decisive.

7

entering into a valid agreement with the Service, may contract away a refund otherwise available. As the Supreme Court has recognized, "a settlement ought not to be overthrown, even if the court should now be of the opinion that the party complaining of it surrendered rights that the law, if appealed to, would have sustained." *Hennessy v. Bacon,* 137 U.S. 78, 82, 11 S.Ct. 17, 19, 34 L.Ed. 605 (1890). Here, if the agreement forbids the refund, then Code sections 6401 and 6402 are of no avail to Alexander.

The Service formulated the 870-P pursuant to its authority under section 6224(c) to enter into binding settlement agreements "with respect to the determination of partnership items." I.R.C. § 6224(c)(1). As both sides recognize, these settlement agreements are closely analogous to the long-established closing agreements authorized under section 7121 of the Code. I.R.C. § 7121. Like closing agreements, a section 6224(c) settlement agreement is in the nature of a contract, binding on all parties absent proof of "fraud, malfeasance, or misrepresentation of fact."[5]

Accordingly, whether the district court was correct in precluding Alexander's claim for a refund depends on the terms of the form 870-P settlement agreement. If the terms of the agreement bar the refund, then Alexander may not recover his otherwise

---

[5] In *Treaty Pines,* this Court noted in the margin that it "express[ed] no opinion as to whether ... section 6224(c) provides a statutory source of settlement authority independent of section 7121." *Treaty Pines,* 967 F.2d at 212 n. 8. The district court relied on a tax court opinion, *Korff v. Commissioner,* 65 T.C.M. (CCH) 1811, T.C.M. (P-H), ¶ 93,033, 1993 WL 17614 (Jan. 28, 1993), and concluded that section 6224(c) does provide an independent basis of settlement authority. Neither party has questioned this conclusion on appeal.

refundable overpayments. We agree with Alexander that the settlement agreement does not by its terms preclude a refund action for amounts paid after the expiration of the statute of limitations on assessment; instead its purpose is merely to cement the treatment of partnership items. Although the adjustments to the partnership items are firm and binding, any assessment of a deficiency based on those adjustments was time-barred, and the agreement does not address such refunds. In other words, Alexander does not base his refund on the treatment of partnership items at all, but rather on the time-barred deficiency assessed as a result of such treatment.

The decision of the Fourth Circuit in *Ewing v. United States,* 914 F.2d 499 (4th Cir.1990), *cert. denied,* 500 U.S. 905, 111 S.Ct. 1683, 114 L.Ed.2d 78 (1991), supports our conclusion. In *Ewing,* the plaintiff-taxpayer mistakenly paid a time-barred deficiency after entering into a section 7121 closing agreement with the Service. The court construed this amount as an "overpayment" under section 6401, which the Service was ordered to refund. According to the court, the closing agreement, though valid and enforceable, did not preclude this particular action; instead, it "simply agreed to the amount of income, gains, losses, deductions, and credits attributable to various businesses in which taxpayers were partners." *Id.* at 505. Specifically, the court noted that the taxpayers "did not agree that they would abstain from claiming any refund that might be available to them under § 6401." *Id.*

The key distinction between *Ewing* and this case is the

9

provision in form 870-P prohibiting any "claim for refund ... *based on any change in the treatment of partnership items*."  The Service contends that *Ewing* is distinguishable because Alexander "specifically agreed not to prosecute any claim for refund or credit."  This interpretation of the settlement agreement disregards the restrictive, qualifying language emphasized above. The Service has simply failed to establish how Alexander's refund claim is in any way based on a change in the treatment of partnership items.[6]

This case, like *Ewing,* is distinguishable from those in which the settlement or closing agreement specifically barred the refund

---

[6]The Service argues that the Fourth Circuit's recent decision in *Goldstein, Baron & Lewis, Chartered v. United States,* 995 F.2d 35 (4th Cir.1993), *cert. denied,* --- U.S. ----, 114 S.Ct. 684, 126 L.Ed.2d 652 (1994), should modify our interpretation of *Ewing.  Goldstein,* however, is inapposite.  In that case, the Service timely assessed taxpayer's employment tax liability.  After the taxpayer paid the tax, the Service erroneously mailed a refund.  Later, after the taxpayer had acknowledged liability for the amount refunded, the Service recovered the refund, still within the limitations period. Taxpayer then sued, arguing the recovery constituted an overpayment under section 6401 because the Service should have done a reassessment, which had since become time-barred.  The Fourth Circuit, without addressing section 6401, held that the taxpayer's written acknowledgment that it was not owed the refund it erroneously received waived any objection to the recovery.

Here, unlike *Goldstein,* there has never been a timely assessment.  Moreover, in *Goldstein,* unlike here, the refund was recovered within the limitations period.  *Ewing* makes clear the importance of these distinctions because, in that case, the court refused to allow the refund of taxes collected *before* the expiration of the limitations period *despite* the Service's failure to make a formal assessment. In short, nothing in *Goldstein* modifies the holding in *Ewing* that payments made *after* the expiration of the limitations period on assessment constitute refundable overpayments. Indeed, we consider the holding of *Ewing* to be mandated by the language of the Code.

10

sought.  We recognize that, under a properly drafted agreement, the Service could bar a refund claim such as that here.  There have been cases in which, under the express terms of the closing agreement, the taxpayer has explicitly and without limitation agreed not to seek any refunds.  For instance, in *Tollerson v. Internal Revenue Service,* 93-1 U.S.T.C. ¶ 50,210, 1993 WL 174884 (S.D.Texas March 4, 1993), *aff'd,* 21 F.3d 1108 (5th Cir.1994), the court identified another version of form 870-P, one in which the taxpayer agreed "to consent to ... assessment and collection" of the disputed amounts.  The case of *Staten Island Hygeia Ice & Cold Storage Co. v. United States,* 85 F.2d 68 (2d Cir.1936), provides an even better example.  There, the court held valid a compromise agreement that expressly waived " "any and all claims to refunds or overpayments' to which [taxpayer] might be entitled and "the benefit of any statute of limitations affecting the collection of the liability sought to be compromised.' "  *Id.* at 70.  Such explicit language critically distinguishes these cases from ours and from *Ewing.*

Finally, we note that, in the future, the Service could avoid this situation by more carefully suspending the statute of limitations.  Here, the Service mailed the FPAA specifically to the once-designated tax-matters partner of Columbia.  Because, at the receipt of the FPAA, this partner was no longer tax-matters partner, the mailing failed to suspend the limitations period on assessment.  Besides a more thorough investigation into the status

11

of Columbia's bankrupt partner,[7] the Service apparently could have addressed the FPAA generally to "the tax-matters partner" at the partnership address as shown on the return, without specifying that partner's name.    I.R.C. §§ 6223(a), (c), 6231(a)(7); Temp.Treas.Reg. §§ 301.6223(a)-1T, 301.6231(a)(7)-1(1), (m)-1T.

Because of its failure not only to suspend the limitations period but also to draft an agreement which by its terms would preclude the action at issue here, the Service must refund Alexander's money.

## Conclusion

For the foregoing reasons, although the district court correctly ruled that the settlement agreement converted the partnership items into nonpartnership items and thereby conferred subject matter jurisdiction, we REVERSE its judgment that the settlement agreement precludes this action, and we REMAND the case for entry of judgment in favor of Alexander.

REVERSED and REMANDED.

---

[7]There was some summary judgment evidence suggesting that the Service knew, or at least should have known, of the bankruptcy of the partner to whom the FPAA was sent.