**Joseph and Tita MONTI, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

No. 96–CV–339 (JS).

United States District Court,
E.D. New York.

July 11, 1997.

John W. Hughes, New York City, for Plaintiffs.

Peter Sklarew, U.S. Dept. of Justice, Tax Div., Washington, DC, for Government.

*MEMORANDUM AND ORDER*

SEYBERT, District Judge.

Plaintiffs Joseph and Tita Monti filed the instant action on January 30, 1996 against the United States claiming a refund of certain partnership taxes they paid in 1982, 1983, 1984 and 1985. Specifically, plaintiffs claim that they were essentially "overcharged" for taxes derived from their investment in Syn–Fuel Associates, 1982 ("Syn–Fuel"), of which they were limited partners. In a tax proceeding involving the partnership, certain of the Syn–Fuel partners had settled their tax liabilities with the IRS. Pursuant to the Internal Revenue Code (the "IRC" or the "Code"), the IRS was required to offer, upon any partner's request, a settlement consistent with the other partners' settlement. Because plaintiffs did not know of the first settlement, however, they failed to make a timely offer for a consistent settlement and were required to pay the full amount of the deficiency. They now seek a refund of the amounts they paid over and above the settlement offer amounts.

Pending before the Court is the government's motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure, as well as the parties' cross-motions for summary judgment. For the reasons set forth below, the government's motion to dismiss for lack of subject matter jurisdiction is GRANTED and the parties' cross-motions for summary judgment are DENIED.

## FACTUAL BACKGROUND

### A. *Introduction to Partnership Tax Code Provisions*

The disputes in this action involve certain procedures and obligations created under the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), Pub.L. No. 97–248, 96 Stat. 324. Prior to the enactment of TEFRA, adjustments of partnership items were determined at the individual partners' level, resulting in duplication of administrative and judicial resources and inconsistent results between partners. *Randell v. United States,* 64 F.3d 101, 103 (2d Cir.1995). Under TEFRA, Congress mandated that in order to provide a uniform method of adjusting partnership items, the tax treatment of any partnership item must be determined on the partnership level. 26 U.S.C. § 6221; *Maxwell v. Comm'r,* 87 T.C. 783, 787, 1986 WL 22033 (1986). Regulations implementing TEFRA define "partnership item" as "the partnership aggregate and each partner's share of ... items of income, gain, loss, deduction, or credit of the partnership." 26 C.F.R. § 301.6231(a)(3)-1(a)(i).

Under TEFRA, when the IRS audits a partnership through an administrative proceeding, the IRS must send a Final Partnership Administrative Adjustment notice (an "FPAA") to a designated "tax matters partner" or "TMP" indicating the result of the audit. 26 U.S.C. § 6223(a)(2). Within 60 days after the FPAA is sent to the TMP, the IRS must also send copies of the FPAA to every partner in the partnership if the number of partners is 100 or fewer. *Id.* § 6223(d)(2). Otherwise, the IRS need only send notice to those partners who have more than a 1% interest in a partnership with over 100 partners. These are called "notice partners" under the Code.

After the FPAA is mailed, the TMP has 90 days to file a petition for judicial review of the FPAA in either the Tax Court, the Court of Federal Claims, or the federal district court in which the partnership is located. 26 U.S.C. § 6226(a). After this 90 day period expires, if the TMP has failed to take action, any notice partner may file a petition for readjustment within the next 60 days in either of the same tribunals. *Id.* § 6226(b). After this 150 day period elapses, if no action has been taken, the tax treatment of the partnership item in issue in the FPAA is conclusively established. *Genesis Oil & Gas, Ltd. v. Commissioner of Internal Revenue,* 93 T.C. 562, 565, 1989 WL 131640 (1989). To the extent and in the manner provided by regulations, the TMP must keep each partner informed of all administrative and judicial proceedings for the adjustment at the partnership level of partnership items. 26 U.S.C. § 6223(g). If the TMP fails to provide any notice or perform any act required under the Code or regulations on behalf of a partner, the applicability of any

proceeding or adjustment under the partnership rules with respect to such partner *is not affected.* *Id.* § 6230(f) (emphasis added).

Among the specific rights of the partners in any administrative proceedings (audits) include: (1) the right to participate in any administrative proceeding relating to the determination of partnership items (§ 6224(a)); (2) the right to waive any rights (§ 6224(b)); and (3) the right to enter into a settlement, upon the partner's request, that is consistent with settlements between the IRS and other partners, as provided under § 6224(c)(2). If the settlement agreement is entered into by the TMP, however, that settlement is binding on all the partners. § 6224(b)(3).

Under Tax Court Rule 248(c), if a settlement is entered into with a partner, the IRS must promptly file with the Tax Court a notice of settlement agreement identifying the participating partners. The IRS must also serve the TMP with a statement setting forth the identity of the settling partners and the terms of the settlement. This notice of settlement to the TMP must be sent within 7 days after the settlement agreement is executed.

### B. *Facts Underlying This Action*

In December 1982, plaintiff Joseph Monti acquired a limited partnership interest in Syn–Fuel. Plf's 3(g) ¶ 1. On their 1982, 1983, 1984 and 1985 joint tax returns, the Montis claimed deductions from the investment in Syn–Fuel in the amounts of $242,388 in 1982; $235,188 in 1983; $237,696 in 1984; and $201,407 in 1985. *Id.* ¶ 2. The Internal Revenue Service (the "IRS") then audited Syn–Fuel for those years and issued a FPAA on March 11, 1988 disallowing the deductions. *Id.* ¶ 3–4.

On August 2, 1988, Syn–Fuel's TMP filed a petition with the United States Tax Court pursuant to § 6226(a) of the Tax Code for readjustment of the partnership items disallowed by the IRS in the FPAA. Plf's 3(g) ¶ 5. In April 1992, the IRS issued a proposal to settle this action and communicated the offer to Dennis Brager, counsel to certain

limited partners including the plaintiffs herein. *Id.* ¶ 6. Brager then prepared a letter dated April 9, 1992 for the limited partners he represented setting forth the terms of the IRS proposal. *Id.* ¶ 7. This letter instructed the Syn–Fuel limited partners, including plaintiffs, to fill out and return by May 4, 1992 an attached Form 870–P either accepting or rejecting the IRS' offer to settle. *Id.* Ex. A. The plaintiffs concede that they received this letter. Brager received a number of executed Form 870–Ps and transmitted them to the IRS, although plaintiffs did not submit one. Stip. ¶ 1.[1]

On December 7, 1992, the IRS entered into a settlement agreement with respect to the partnership items at issue in the Tax Court proceeding with several limited partners, not including the plaintiffs (the "Craig settlement"). Plf's 3(g) ¶ 8. Dennis Brager, on behalf of other limited partners, had negotiated the terms of this settlement in mid–1992 with Lawrence Dorr, the IRS Appeals Officer assigned to the case. Gov't Motion to Dismiss, at 5. Dorr also informed Brager that any partner who wanted to enter into the settlement could do so. By letter dated March 10, 1993, the IRS notified Brager and Arthur Goldman, Syn–Fuel's Tax Matters Partner, for the first time that the Craig Settlement had been consummated as of December 31, 1992. Plf's 3(g) ¶¶ 9, 10. This letter, however, followed the date of the Craig settlement by more than 60 days, despite Rule 248(c) of the Tax Court Rules which requires that a statement must be served on the Tax Matters Partner within 7 days after settlement is executed. *Id.* ¶¶ 11, 12.

In March 1993, shortly after the IRS letter was sent to Brager, Lawrence Dorr (the IRS Appeals officer handling the Tax Court matter) advised Brager that the 60 day period provided in IRS Regulation § 301.6224(c)–3T(c)(3)(ii) for other partners in the TEFRA proceeding to request a settlement consistent with the Craig settlement had expired. Plf's 3(g) ¶ 13. Brager advised Dorr of his objection to the IRS' position regarding the expi-

---

1. By stipulation, the parties agreed as to certain facts for the purposes of these motions and further agreed that the supplemental facts in the

Government's Memorandum of Law in Support of its Motion, to Dismiss would be admitted, with minor limitations, as well.

ration of the rights to settle because they had not received proper notification that the settlement had even been executed. *Id.* ¶ 14. On April 1, 1993, the Tax Court issued its decision in the TEFRA proceeding and upheld the FPAA. *Id.* ¶ 15.

Subsequently, Brager prepared a letter dated April 30, 1993 to his Syn–Fuel clients and advised them that in his view, they were entitled to a settlement consistent with the Craig settlement, but that the IRS was taking the position that the limited partners were not entitled to a settlement because the applicable time limit to request consistent terms had expired. Plf's 3(g) ¶ 16. The letter further instructed the limited partners to fill out the attached "Request for Consistent Settlement Under IRC Section 6224(c)" and return it to arrive no later than May 10, 1993 (within 60 days of the March 10, 1993 IRS letter). *Id.* Ex. C. Plaintiffs concede that they received this letter as well, but did not execute or return it. Stip. ¶ 1.

The IRS' position was confirmed again by letter dated June 10, 1993 from Lawrence Dorr, the IRS Appeals Officer, to Brager. Plf's 3(g) ¶ 17. Dorr advised Brager, however, that "in the interest of fairness" that IRS would accept any requests for consistent settlement terms received within 60 days of the first IRS letter which gave the TMP actual notice of the Craig settlement (that is, by the May 10, 1993 deadline Brager had indicated in his letter to the limited partners). *Id.* Dorr would not accept any requests for consistent terms received after that date because the IRS had already given these partners two earlier deadlines to accept the settlement terms, both of which were ignored. *Id.* Ex. D. Only a few partners, not including the plaintiffs, sent the Request Form back to Brager, although only one was received before the May 10, 1993 deadline. Gov't Motion to Dismiss, at 6.

On May 20, 1994, the Second Circuit affirmed the Tax Court's decision. Plf's 3(g) ¶ 18. The IRS then mailed a notice of computational adjustment to the plaintiffs on June 28, 1994, reflecting the change by the IRS to the tax liability of the plaintiffs arising after the Tax Court decision. *Id.* ¶ 19.

On December 1, 1994, almost a year and a half after Brager informed them that the form was due, plaintiffs sent a Request for Consistent Settlement Terms under § 6224(c)(2) directly to the IRS and not through their counsel Brager. Plf's 3(g) ¶ 20. At the same time, the plaintiffs paid all taxes claimed due by the IRS for tax years 1982, 1983, 1984 and 1985. *Id.* ¶ 21. On their amended income tax returns, however, they claimed the following refunds (plus interest) which would be due if the terms of the Craig settlement had been applied to them: $60,733 for 1982; $58,085 for 1983; $61,110 for 1984; $49,702 in 1985. *Id.* ¶ 22. On December 9, 1994, the IRS notified plaintiffs that they were denying the request to apply the terms of the Craig settlement on the grounds that the time to request such treatment had expired because it was filed more than 60 days after the settlement was entered into. *Id.* ¶ 23.

The government has moved to dismiss the complaint for lack of jurisdiction and for failure to state a claim on the grounds that: (1) the Court lacks subject matter jurisdiction because Congress has expressly excluded from the statutory waiver of sovereign immunity any action for a refund attributable to partnership items; (2) the matter is res judicata as a result of the April 1, 1993 Tax Court decision; and (3) their claim is barred by plaintiffs' laches in attempting to wait out the result of appeal instead of accepting the settlement immediately as required under the Code. The plaintiff has cross-moved for summary judgment on the grounds that the government never made the settlement offer available for plaintiffs to request and the government has cross-moved for judgment as a matter of law.

### DISCUSSION

In keeping with Congress' goal of the uniform resolution of taxation of partnership items, § 7422(h) of the Tax Code deprives federal district courts of subject matter jurisdiction in tax refund suits attributable to "partnership items." *See also Fox v. United States,* 96–2 U.S.T.C. ¶ 50,430, 1996 WL 523731 (E.D.Cal.1996) ("while the United States has waived its sovereign immunity for

tax refund actions in general, it has not done so for refund actions attributable to partnership items"). This rule is an exception to the general rule that federal district courts have subject matter jurisdiction for tax refund suits under § 1346(a) of the Code. In light of § 7422(h), therefore, the Court only has jurisdiction over this action if the tax refund request pertains to a nonpartnership item, despite the fact that plaintiffs' have pleaded jurisdiction on the basis of the general refund section, § 1346(a).

Not surprisingly, the government's motion to dismiss is based primarily on the argument that plaintiffs are attempting to litigate the refund of a "partnership item," which is barred under § 7422(h). A "partnership item" is defined under the Code as "any item required to be taken into account for the partnership's taxable year under any provision of subtitle A to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle, **such item is more appropriately determined at the partnership level than at the partner level.**" 26 U.S.C. § 6231(a)(3) (emphasis added). Under IRS regulations, "partnership items" include items of income, gain, loss, deduction or credit of the partnership. 26 C.F.R. § 301.6231(a)(3)–1. An item ceases to be a "partnership item" however, and converts to a nonpartnership item when the IRS enters into a settlement agreement with the partner with respect to such items. *Id.* § 6231(b)(1)(C).

Plaintiffs claim that their action is not attributable to a partnership item, and therefore the Court does have jurisdiction over this refund action. Rather, plaintiffs assert that the matter to be adjudicated is whether the IRS had an obligation to extend plaintiffs, as individual partners, the same settlement offer it gave the Craig partners pursuant to § 6224(c), not the amount of a tax liability for the partnership common to all partners. In this regard, they are requesting the Court to rule upon a right granted under § 6224(c)(2), which pertains to individual partners and not the partnership. Section 6224(c)(2) provides that "If the Secretary enters into a settlement agreement with any partner with respect to partnership items for any partnership taxable year, the Secretary **shall offer to any other partner who so requests** settlement terms for the partnership taxable year which are consistent with those contained in such settlement agreement." § 6224(c)(2). In this regard, they claim that § 6224(c) necessitates individual treatment for each partner because each request is going to be different, based on when it is mailed, the amounts settled and so forth.

These so-called individual partner factors, however, are more appropriately resolved on the partnership level and are attributable to a partnership item. First, § 6224(c)(2) expressly refers to the settlement of "partnership items," so by direct implication, what plaintiffs were unable to settle was a "partnership item." In turn, this is the same "partnership item" for which they seek a refund and it has not been converted to a "nonpartnership item" by operation of a settlement. *See* § 6231(b)(1)(C). Second, simply because each settlement offered would be in a different amount does not negate the fact that a "partnership item" is involved. Indeed, at the partnership level proceeding, each partner will owe a different amount in taxes based on their pro rata share of the partnership. Regardless of the differing amounts, partnership items are resolved in a single proceeding at the partnership level to ensure consistency of treatment of tax items. Third, plaintiffs are not seeking to enforce a right that is unique to them and none of the other partners. Each partner that did not settle their partnership item was entitled to the opportunity to settle on terms consistent with the Craig settlement. This opportunity arose directly out of and is directly related to the partnership level determination of each partners' tax liability. In this respect, if plaintiffs' tax refund claim was considered to be based on a nonpartnership item, TEFRA's goals of uniformity in resolution of partnership items would be frustrated. In particular, the Code provides a mechanism not only to make sure that all partnership items are treated the same among partners, but also provides a mechanism to make sure that all partnership items that are settled are treated the same among partners by allowing plaintiffs to have the same opportunity to

settle. To bring this opportunity to settle outside the partnership level would be to undermine the consistency and uniformity of resolving all the partners claims of partnership items together.[2]

Accordingly, the Court finds that plaintiffs' tax refund action in this court pertains to a "partnership item" as defined under the Code and regulations because their claim relates directly to the treatment of their tax liability for partnership losses and their request for settlement should have been more appropriately resolved at the partnership level during the TEFRA proceeding. In addition, because the partnership item was not settled, regardless of the reasons, it did not convert to a nonpartnership item that could be adjudicated in this Court. Under § 7244(h), therefore, this Court lacks subject matter jurisdiction for the plaintiffs to relitigate their tax liability for 1982 through 1985 as a result of their investment in Syn–Fuel.

■ The remaining question for the Court, therefore, is if plaintiffs' claims fall into one of the exceptions to § 7422(h) barring jurisdiction over refund actions for partnership items. Relevant to this action, the Code provides that federal courts do have jurisdiction to hear refund claims for partnership items where the IRS has "failed to allow credit or to make a refund to a partner in the amount of the overpayment attributable to the application to the partner of a settlement." 26 U.S.C. § 6230(c)(1)(B). This section must be read in tandem with § 6231(b)(1)(C), which provides that once a partner settles a partnership item with the IRS, that item ceases to be a partnership item excluded from the scope of refund suits.

The government asserts that this exception does not apply to the instant action for several reasons. First, the government claims that the overpayment claimed in this action by the Montis is not "attributable to the application to the partner of a settlement." According to the government,

§ 6230(c)(1)(B) embraces the situation where there is an executed settlement agreement and the partner claims that the IRS has failed to honor it. In this regard, where the IRS has not entered into a settlement agreement, a partner is incapable of submitting a claim for a refund that is "attributable to the application to the partner of a settlement agreement."

Second, the government argues that this reading is consistent with the provisions in § 6224 of the Code, which specifies the limited circumstances under which a settlement will be automatically binding—i.e., when the TMP is a party to the settlement. On the other hand, where the TMP is not involved, as here, a settlement agreement with one partner only requires the IRS to offer consistent terms to other partners who may chose to accept such consistent treatment or to decline it and be subject to the risks and potential benefits of pending or future litigation.

The Court agrees that § 6224(c), which requires the IRS to offer a consistent settlement on request, would be rendered meaningless if § 6230(c) were read to allow nonsettling partners to get tax credit for a settlement entered into by another partner. There would simply be no need for the offer/request provisions of § 6224(c) in those circumstances because nonsettling partners would be able to take advantage of another partners' settlement, regardless of whether they were actually offered the settlement. Moreover, the Code specifically provides that only settlements with the TMP are automatically binding on all partners. § 6224(b)(3). As such, it would make no sense to allow partners to circumvent these rules as to settlement by later allowing them to seek to apply a settlement to which they never were a party. Along those same lines, plaintiffs' reading of § 6230(c) would allow them to essentially enforce a settle-

**2.** In addition, by allowing the right to a consistent settlement to extend beyond the partnership level proceedings and to be allowed as separate individual proceedings would allow plaintiffs, such as the Montis, to be able to refuse to settle during the partnership proceeding in the hopes of obtaining more favorable tax liability through the court system, and then if the courts found that their tax liability would be higher than the offered settlement amount, to go back and obtain the more favorable terms. This would give tax refund plaintiffs under these circumstances an unlimited number of bites at the apple.

ment agreement with the IRS that neither they nor the IRS ever executed, and certainly does not comply with the administrative, procedural and technical requirements for a binding settlement with the IRS. *See generally* Tax Code Ch. 74—Closing Agreements and Compromises.

In addition, the government stresses that because all partners are parties to the Tax Court proceeding challenging the FPAA as per § 6224(a) of the Code, the proper procedure to rectify late notice by the IRS would have been to make a motion before the Tax Court during the TEFRA proceeding to require the Commissioner to offer consistent terms. Under Tax Court Rule 248, which required that the notice be given in the first place, the Tax Court could entertain a motion to enter decision as to an individual partner that would be consistent with the terms of a settlement agreement with another partner. For example, in *Consolidated Cable, Ltd. v. Commissioner*, No. 19221–87, 1990 WL 212866 (Tax Court March 26, 1992), the Tax Court granted a motion for entry of decision as to participating partners consistent with the terms of a settlement with the TMP over the objection of the Commissioner.[3] In addition, the government points out that in this action, plaintiffs' claims seem to arise from the government's violation of Rule 248(c) by failing to give prompt notice of the Craig settlement. It would seem intuitively more appropriate that such an argument should be presented to the Court which promulgated the rule that is sought to be enforced.

Plaintiffs argue, on the other hand, that the exception set forth in § 6230(c) does not pertain to settlements strictly with a particular partner, but applies to any settlement with a partner. In support of this argument, plaintiffs first point out that in § 6231(b)(1)(C) of the Code, in describing when taxable partnership items convert to "nonpartnership items" after settlement, Congress referred to items that the Secretary "enters into a settlement agreement **with the partner.**" (Emphasis added). This language, according to plaintiffs, restricts the

operation of § 6231 to conversion only for the settling partners while the other partner's items remain partnership items. In § 6230(c), however, Congress only referred to settlement agreements in general, without adding the limiting language of "with the partner." In such cases, the rules of statutory construction require that the Court not infer the "with the partner" language into § 6230(c). *Arizona Elec. Power Cooperative, Inc. v. United States*, 816 F.2d 1366, 1375 (9th Cir.1987) ("when Congress includes a specific term in one section of a statute but omits it in another section of the same Act, it should not be implied where it is excluded."). As such, plaintiffs assert that § 6230(c) is not restricted solely to the settling partner and a nonsettling partner may seek to obtain credit for another partner's settlement.

Plaintiffs' argument fails for several reasons. First, as the government responds, the only logical reading of § 6230(c) is that it refers to a settlement with the partner seeking the refund and not with some other partner. The statute refers to "the" partner as opposed to "a" partner in both § 6230 and § 6231. Second, the phrase "with the partner" was necessary in § 6231 to clarify that only a settlement *with the Partner* would convert the partnership item to a non-partnership item, and not just any settlement. Such language was not necessary in § 6230 and would in fact be redundant. In particular, § 6230 refers to the Secretary's failure to allow a refund to "the partner in the amount of the overpayment attributable to the application to the partner of a settlement." To add "with the partner" after the word settlement would add nothing. Plaintiff's construction of § 6230(c), therefore, lacks merit.

The Court also finds that the Fifth Circuit's decisions in *Alexander v. United States*, 44 F.3d 328 (5th Cir.1995) and *Treaty Pines Investments Partnership v. Commissioner of Internal Revenue*, 967 F.2d 206 (5th Cir.1992) do not support plaintiffs' contentions that the Court has subject matter jurisdiction over their refund suit. Indeed, as set forth below, these decisions actually

---

**3.** In *Consolidated Cable,* however, the TMP actually entered into the settlement and as mentioned above, a settlement with a TMP is automatically

binding on all partners involved in the TEFRA proceeding. § 6224(b)(3).

support the government's argument that the Court *lacks* jurisdiction in this action.

In *Alexander,* the plaintiff limited partner had claimed certain tax deductions for 1984 based on his investment in Columbia Building, Ltd., a limited partnership. In 1988, the IRS audited Columbia Building and issued a FPAA increasing the plaintiff's tax liability. Plaintiff and the IRS then settled the increased tax liability when plaintiff executed a Form 870–P, which was accepted by the IRS. One year later, however, plaintiff became aware that the statute of limitations had passed for the IRS to make an additional assessment for his 1984 tax liability and timely filed a claim for a refund first with the IRS and then in federal district court. The Fifth Circuit concluded that the plaintiff's 1984 partnership items had converted to nonpartnership items after the settlement with the IRS as per § 6231 of the Code and that the Court therefore had jurisdiction to hear the refund suit. 44 F.3d at 331.

Similarly, and in a consistent opinion, in *Treaty Pines,* the Fifth Circuit also faced the question of the court's jurisdiction if a partnership item was converted into a nonpartnership item under § 6231. In that case, after an audit of Treaty Pines Investments Partnership, the IRS issued an FPAA affecting certain partnership items. The Treaty Pines partners then filed a petition in Tax Court for readjustment of the items in the FPAA. The IRS then engaged in settlement negotiations with some of the partners, including partners James and Andrea Garrity. After a series of conflicting correspondence with the IRS as to whether the Garritys had or had not entered into a settlement with the IRS, the Tax Court issued its decision dismissing the petition and upholding the FPAA. The Garritys then made a post-decision motion to determine their status as a party and whether they were bound by the Tax Court's decision in the TEFRA proceeding. The Garritys also moved to vacate the dismissal for lack of subject matter jurisdiction upon realizing that the statute of limitations had run before the IRS made its assessment under the FPAA. The Tax Court denied all of the Garrity's motions, finding that it lacked jurisdiction to determine the

issue of whether the statute of limitations had run because the case had already been dismissed and the Garrity's were bound by that dismissal.

The Fifth Circuit held in *Treaty Pines* that the Tax Court in the TEFRA proceeding erred in failing to consider the validity of the settlement between the IRS and the Garritys. 967 F.2d at 210. The Tax Court necessarily had to consider whether the settlement was effective because if it was, the partnership items for the Garritys in the TEFRA proceeding converted to nonpartnership items under § 6231. The Tax Court would no longer have jurisdiction over the Garrity's tax items as of the settlement date and its final order dismissing the action would not have been binding on them. *Id.* In ascertaining whether the final order was binding on the Garritys, therefore, the Tax Court in the TEFRA proceeding should have determined whether the Garrity's partnership items converted to nonpartnership items and were removed from the TEFRA proceeding.

As the government points out, neither *Alexander* nor *Treaty Pines* supports the plaintiff's argument that this Court has subject matter jurisdiction to provide a refund with respect to plaintiff's tax liability for 1982 through 1985. The Court does not dispute the holding in *Alexander* that if the partners settle with the IRS during the TEFRA proceeding, their tax liability ceases to be a partnership item and becomes a nonpartnership item. Once the partnership item converts to the nonpartnership item after the settlement is consummated, the district court does have jurisdiction to hear a taxpayers refund claim to apply the terms of that settlement if the IRS fails to honor it. *See* § 6230(c). Such is not the case in this action. The plaintiffs have not argued, nor could they, that they settled with the IRS. Rather, they contend that they did not settle, as they had a right to, because of the inadequate notice of the Craig settlement from the IRS. Nothing in *Alexander,* however, suggests that § 6230(c) should be construed to allow a nonsettling partner in a TEFRA proceeding to later apply for tax credit on the basis of the terms of another partner's settlement, nor does it suggest that the IRS'

failure to offer a settlement under § 6224(c) converts a partner's tax liability into a non-partnership item prior to an actual and binding settlement.

Likewise, nothing in the *Treaty Pines* decision suggests that the Court has jurisdiction over the plaintiffs' refund action. Indeed, this case supports the government's argument that the Tax Court during the TEFRA proceeding, and not the district court in a later refund suit, has an obligation to determine if the partners involved in the TEFRA proceeding have settled during the course of the TEFRA proceeding and has the authority to adjudicate the IRS' conduct in settling partnership items. *Treaty Pines* also makes clear that whether a partner in a TEFRA proceeding actually settled the case can be raised on the appeal of the Tax Court decision in the partnership proceeding. In this action, the Montis never brought this issue to the attention of the Tax Court nor to the Second Circuit on the appeal of the Tax Court's final decision. Accordingly, the Court finds that neither *Alexander* nor *Treaty Pines* support plaintiffs' construction of either § 6224(c) or § 6230(c) that would allow this Court to exercise subject matter jurisdiction despite the mandates of § 7422(h).

■ Finally, and perhaps most importantly, when ascertaining whether a section of the Code would grant jurisdiction on this Court, the Code is to be construed narrowly: "It is elementary that 'the United States, as sovereign, is immune from suit save as it consents to be sued ... and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit' ... and is to be strictly construed." *Randell*, 64 F.3d at 106 (citing *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980); *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 771, 85 L.Ed. 1058 (1941)). In keeping with this rule, the language of the Code conferring jurisdiction on this Court must be narrowly and strictly construed in favor of the government.

■ As a final note, the Court also points out that to provide a refund to plaintiffs based on the terms of the Craig settlement would in practice enforce a settlement between a taxpayer and the IRS that has met none of the administrative, procedural or technical requirements for settlements that are exhaustively set forth in Chapter 74 of the Tax Code. Moreover, in enforcing such a settlement, the Court further takes note that general contract principles apply to the formation of a settlement agreement, including offer, acceptance and consideration. *Alexander*, 44 F.3d at 332. This entire action, however, is about the fact that the IRS never made a reasonable settlement offer. Without even an offer, the Court fails to comprehend how it can enforce a settlement that neither satisfies any of the general tenets of contract law nor the specific and detailed requirements for a binding settlement with the IRS.

As such, the Court finds that the exception in § 6230(c) to the general bar on refund suits for partnership items only applies to partners who have actually entered into a settlement agreement. Accordingly, this action, which pertains to a partnership item, is barred under § 7422(h) of the Internal Revenue Code.

## CONCLUSION

For the reasons set forth above, the defendant's motion to dismiss this action for lack of subject matter pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure is GRANTED in its entirety and the complaint is dismissed with prejudice. The defendant's remaining motion for summary judgment and the plaintiffs' cross-motion for summary judgment are denied as moot. The Clerk of the Court is directed to mark this case as closed.

SO ORDERED.