29 F.3d 98
 74 A.F.T.R.2d 94-5371, 94-2 USTC P 50,357
 Robert FERGUSON, John Allen, Joseph Arle, Paul Benchwick,
Victor Blaha, Richard Doran, Lionel Gordon, Joseph Halpin,
Ben Johnson, Thomas Katopody, Carlton Marshall, E. Barger
Miller, Maurice Richards, John Rudy, II, Richard Sandler,
Donna Sandler, Ira Sontupe, Harold Witham, Gail Witham,
David Zuehlke, John McCurdy, a notice partner, Keith
Gaskell, a notice partner, Petitioners-Appellants.
Peat Oil and Gas Associates, James Karr, partner other than
the Tax Matters partner, Syn-Fuel Associates, 1982, a
partner other than the Tax Matters partner, Peat Oil and Gas
Associates, a Limited Partnership, Joseph Yadgaroff and
Robert Ferguson, a partner other than the Tax Matters
partner, and Syn-Fuel Associates, A Limited Partnership,
Keith Gaskell, a partner other than the Tax Matters partner,
Petitioners,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.
 Nos. 1699, 1700, 1701, 1702, 1703, 1704, Dockets 93-4210,
93-4212, 93-4214, 93-4216, 93-4218, 93-4220.
 United States Court of Appeals,
Second Circuit.
 Argued May 20, 1994.
Decided July 13, 1994.
 
 Dennis N. Brager, Los Angeles, CA (Jackson D. Hamilton, Roberts, Stevens & Cogburn, Asheville, NC, of counsel), for appellants.
 Mary Frances Clark, Dept. of Justice, Washington, DC (Loretta C. Argrett, Asst. Atty. Gen., Gary R. Allen, David I. Pincus, Dept. of Justice, of counsel), for appellee.
 Before: MESKILL, MINER and MAHONEY, Circuit Judges.
 PER CURIAM:
 
 
 1
 In this tax appeal, the petitioners-appellants challenge the decision of the United States Tax Court, Cohen, J., to affirm the disallowance of certain deductions by the respondent Commissioner of Internal Revenue (Commissioner). We affirm.
 
 BACKGROUND
 
 2
 The tax court's opinion fully describes the underlying facts of this case, see Peat Oil and Gas Associates v. Commissioner, 100 T.C. 271 (1993), and we will repeat only those facts necessary to our resolution of this appeal. The petitioners-appellants are notice partners or "5-percent groups," see 26 U.S.C. Sec. 6231(a)(8), (11), of three limited partnerships, Syn-Fuel Associates (SFA), Syn-Fuel Associates, 1982 (SFA, 1982), and Peat Oil and Gas Associates (POGA) (collectively "the partnerships").[1] The appellants appeal from the tax court's decision on behalf of the partnerships pursuant to 26 U.S.C. Sec. 6226(g) ("only the tax matters partner, a notice partner, or a 5-percent group may seek review of a determination by a [tax] court under this section" (emphasis added)).
 
 
 3
 The partnerships were involved in a network of entities allegedly created to pursue production of an alternative energy source known as K-Fuel, by virtue of a technique called the Koppelman Process. For certain tax years between 1982 and 1987, the partnerships sought to deduct, on their partnership returns, certain licensing fees and interest payments relating to the Koppelman Process activities. SFA, 1982 also sought to deduct research and development expenses relating to its Koppelman Process activities. Although the Commissioner conceded the propriety of certain deductions and credits relating to the partnerships' oil and gas activities, the Commissioner disallowed the claimed Koppelman Process deductions. The appellants, on behalf of the partnerships, then filed in the tax court petitions for readjustment of partnership items. See 26 U.S.C. Sec. 6226(b)(1).
 
 
 4
 The tax court had previously considered the partnerships' activities in a case involving individual limited partners' tax returns for the years 1981 and 1982. Smith v. Commissioner, 91 T.C. 733 (1988). There, the tax court had determined that the partnerships' Koppelman Process activities lacked economic substance and were undertaken without an honest and actual profit motive. The taxpayers in that case separately appealed the tax court's decision. The Eleventh Circuit affirmed, Karr v. Commissioner, 924 F.2d 1018 (11th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 992, 117 L.Ed.2d 153 (1992), but a divided panel of the Sixth Circuit reversed, Smith v. Commissioner, 937 F.2d 1089 (6th Cir.1991).
 
 
 5
 Considering the instant case, the tax court first found that, because this Circuit would be the proper venue for an appeal by the partnerships, it was not bound by the decisions of the Sixth and Eleventh Circuits. The tax court then, with the approval of all parties, incorporated the record from its Smith/ Karr case into the record in this case. The tax court subsequently reasserted its previous finding that the partnerships' Koppelman Process activities had lacked economic substance and had been undertaken without an actual and honest profit motive. Accordingly, the tax court affirmed the Commissioner's disallowance of the deductions at issue.
 
 DISCUSSION
 
 6
 First, we review the tax court's determination that the partnerships' licensing fees and research and development fees were not deductible. Second, we review the tax court's disallowance of the partnerships' claimed interest deductions.
 
 
 7
 I. Deductions for Licensing Fees and Research and Development Fees
 
 
 8
 An activity will not provide the basis for deductions if it lacks economic substance. See Gregory v. Helvering, 293 U.S. 465, 469, 55 S.Ct. 266, 267, 79 L.Ed. 596 (1935); Gardner v. Commissioner, 954 F.2d 836, 838 (2d Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 1940, 118 L.Ed.2d 546 (1992). "The question whether a transaction is devoid of economic substance is often analyzed in terms of its being 'sham.' A sham transaction analysis requires a determination 'whether the transaction has any practicable economic effects other than the creation of income tax losses.' " Jacobson v. Commissioner, 915 F.2d 832, 837 (2d Cir.1990) (quoting Rose v. Commissioner, 868 F.2d 851, 853 (6th Cir.1989)). We have also held that a business lacks economic substance "if it is fictitious or if it has no business purpose ... other than the creation of tax deductions." DeMartino v. Commissioner, 862 F.2d 400, 406 (2d Cir.1988). Moreover, the Tax Code provisions, under which the partnerships' claimed deductions for licensing fees and research and development fees arguably fall, require that the expenses sought to be deducted be incurred in a "trade or business." See 26 U.S.C. Sec. 162(a) (deduction for "ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business"); id. Sec. 174 (deduction for "research or experimental expenditures which are paid or incurred ... in connection with [a] trade or business"). An activity may not be characterized as a "trade or business," however, if the activity is not undertaken with an intent to profit. See Portland Golf Club v. Commissioner, 497 U.S. 154, 164, 110 S.Ct. 2780, 2787, 111 L.Ed.2d 126 (1990); The Brook, Inc. v. Commissioner, 799 F.2d 833, 838 (2d Cir.1986).
 
 
 9
 In this case, therefore, the question whether the partnerships should be allowed deductions for the licensing fees and research and development fees turns first on whether the tax court correctly found that the partnerships' activities lacked economic substance and, second, if not, whether the court nonetheless properly found that those activities were not undertaken with an actual and honest profit objective.
 
 Economic Substance
 
 10
 We review the tax court's factual finding on the issue of economic substance only for clear error. Jacobson, 915 F.2d at 837. After reviewing the full record in this case, we conclude that the tax court's finding that the partnerships' Koppelman Process activities lacked economic substance is not clearly erroneous.
 
 
 11
 First, the amount and structure of the expenses at issue--fees paid by the partnerships to Sci-Teck Licensing Corp. (Sci-Teck) for their licenses to the Koppelman Process, and fees paid by the partnerships to Fuel-Teck Research and Development, Inc. (FTRD) for research and development services--suggested a lack of economic substance. The amount of all of the fees was based on the number of partnership units sold, not on the fair market value of the license or services rendered. 91 T.C. at 759. The licensing fees and research and development fees also were not negotiated at arms' length because the partnerships, Sci-Teck and FTRD were all part of the same network of interrelated entities. Id. In addition, payment of the fees was largely deferred, resulting, for example, in inadequate funding of the research and development activities in the early years of the partnerships. Id. at 761.
 
 
 12
 Second, the tax court's findings regarding the inexperience of and conflicts of interest among the partnerships' promoters were properly considered as indicia of the absence of economic substance. As the tax court found, "[a]ctual control [of the partnerships] rested in persons whose compensation from these partnerships depended solely on capital contributions, while they had interests in the profitability of competing ventures." Id. at 764. For example, Richard B. Basile was a promoter of the partnerships but also held interests in Sci-Teck and other entities that stood to profit at the expense of the partnerships. Id. at 744. Moreover, the partnerships' general partners were all tax and financial professionals, having no technical experience that would be relevant to the Koppelman Process activities. See id. at 741-42, 756.
 
 
 13
 Third, as the tax court found, the partnerships' offering memoranda placed heavy emphasis on the tax benefits that would be gained by subscribers. The memoranda specifically stated that "an Investor [who] does not, or is not able to, utilize such tax savings profitably ... will not be able to derive the full intended benefit of investment." Id. at 741. The memoranda also were replete with warnings about the partnerships' riskiness. For example, the memoranda disclosed that the value of the Koppelman Process license was uncertain and that, if Sci-Teck's license to the Koppelman Process should prove to be invalid, the partnerships would essentially have no recourse against it. See id. at 742. The memoranda also cautioned that the financial success of the Koppelman Process project "was highly unlikely." Id. at 743.
 
 
 14
 Finally, the offering memoranda disclosed that almost seventy percent of the partnerships' capital contributions were to be paid to promoters, lawyers and other network entities, including Sci-Teck and FTRD. Only a small percentage, however, was reserved for working capital. Id. at 742.
 
 
 15
 In light of all of this evidence of the economics of the partnerships' Koppelman Process activities, we affirm the tax court's finding that the partnerships' Koppelman Process activities lacked economic substance and its decision to uphold the Commissioner's disallowance of the claimed deductions. We thus agree with the Eleventh Circuit's decision in Karr, 924 F.2d at 1024-25.
 
 Profit Motive
 
 16
 Having concluded that the partnerships' Koppelman Process activities lacked economic substance, those activities must be disregarded for tax purposes and cannot form the basis of any deductions. It is unnecessary, therefore, for us to analyze the tax court's findings with respect to the partnerships' profit motive. See Gilman v. Commissioner, 933 F.2d 143, 148 n. 5 (2d Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 871, 116 L.Ed.2d 776 (1992); see also Karr, 924 F.2d at 1025 n. 8. Accordingly, we need not resolve the parties' dispute as to whether section 162 requires that the taxpayer's profit motive be primary or dominant or whether it may be only one of several objectives.
 
 II. Interest Deductions
 
 17
 The partnerships also claimed interest deductions under 26 U.S.C. Sec. 163(a), which provides for a deduction for "all interest paid or accrued within the taxable year on indebtedness," for interest accruing on their long term indebtedness to Sci-Teck and FTRD. The tax court affirmed the Commissioner's disallowance of these deductions on the basis of its finding that the interest was very unlikely to be paid. 91 T.C. at 762. We agree.
 
 
 18
 A taxpayer may deduct interest on indebtedness pursuant to section 163(a) if the indebtedness is genuine and if the interest meets the accruability standards set forth in 26 C.F.R. Sec. 1.461-1(a)(2). Because the tax court's disallowance of the interest deductions appears to have relied solely on the latter factor, we will focus on that factor.
 
 
 19
 Section 1.461-1(a)(2), which establishes the test for determining when an expense has "accrued" for tax purposes, provides that accrual method taxpayers, such as the partnerships, may not deduct an expense in a particular tax year unless "all the events have occurred that establish the fact of the liability, the amount of the liability can be determined with reasonable accuracy, and economic performance has occurred with respect to the liability." A liability that is contingent has not "accrued" within the meaning of the regulation. United States v. Hughes Properties, 476 U.S. 593, 600, 106 S.Ct. 2092, 2096, 90 L.Ed.2d 569 (1986).
 
 
 20
 The interest sought to be deducted by the partnerships in this case was payable only out of anticipated revenues from the oil and gas activities or the Koppelman Process activities. Moreover, the interest was not due for twenty-five years. In light of these facts, the tax court's finding that the interest liability was contingent or very unlikely to be paid thus was not clearly erroneous. See Karr, 924 F.2d at 1025. The partnerships nonetheless contend that their interest liability was not contingent in light of their hope or intention to prepay the interest. We are not persuaded; an intention to prepay a liability cannot alter the nature of the liability itself.
 
 CONCLUSION
 
 21
 The judgment is affirmed.
 
 
 
 [1]
 The tax court held that the venue for an appeal from its determination in this case would properly lie in this Circuit because, at the times relevant here, each partnership maintained a principal place of business in New York. Peat Oil and Gas Assocs. v. Commissioner, 65 T.C.M. (CCH) 2259 (1993); see 26 U.S.C. Sec. 7482(b)(1)(E). Although the appellants initially challenged the tax court's venue determination, no objection to venue is currently before us. We assume, without deciding, therefore, that venue for appeal properly lies in the Second Circuit