**Walter and Oksana PROCHORENKO, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

No. 98–754T.

United States Court of Federal Claims.

Jan. 13, 2000.

---

Dennis N. Brager, Los Angeles, CA, for plaintiff.

Ellen C. Specker, U.S. Department of Justice, Washington, D.C., with whom were Assistant Attorney General Loretta C. Argrett and Chief, Court of Federal Claims Section, Mildred L. Seidman. William K. Drew, U.S. Department of Justice, of counsel.

## OPINION

FIRESTONE, Judge.

This case comes before the court on the parties' cross motions for summary judgment.[1] This case involves the scope of the settlement provision established by Congress under the Tax Equity and Fiscal Responsibility Act of 1982, or "TEFRA." The issue to be determined is whether the plaintiffs are entitled to reduce their partnership tax liability based on the statutory right to a consistent settlement set forth in section 6224(c)(2) of the Internal Revenue Code.[2] As discussed

*infra,* section 6224(c)(2) requires that the IRS offer all partners in a partnership the opportunity to settle "partnership items" upon the same terms as another partner who settled with the IRS, if a request for a consistent settlement is made within certain time frames provided for under the Code and its implementing regulations. The Prochorenkos claim that under section 6224(c)(2) and its implementing regulations, they are entitled to a settlement consistent with a settlement the IRS entered into with another partner and thus, their partnership tax liability should be reduced. The government contends that the Prochorenkos are not entitled to a consistent settlement under section 6224(c)(2) and therefore, they are not entitled to any refund of their partnership tax.

After carefully reviewing the submissions of the parties and hearing oral argument, the court agrees with the government that the Prochorenkos are not entitled to a reduction of their tax liability based on the settlement the IRS entered into with another partner. Therefore, the court will **GRANT** summary judgment to the defendant.

## FACTUAL BACKGROUND

The material facts in this case are not in dispute. Plaintiff Walter Prochorenko acquired a limited partnership interest in Syn–Fuel Associates ("Syn–Fuel") in 1982. On their 1982, 1983, 1984, and 1985 joint federal income tax returns, Mr. Prochorenko and his wife claimed deductions related to their investment in Syn–Fuel in the respective amounts of $40,398, $39,198, $39,616, and $33,363. The Prochorenkos based their deductions on their relative share of the Syn–Fuel partnership losses. Thereafter, the IRS audited Syn–Fuel's partnership returns for the tax years 1982 through 1985, under the procedures established by Congress for determining partnership income and losses under TEFRA. *See* §§ 6221–6333. Under TEFRA, the tax treatment of "partnership items"[3] is determined in a unified proceeding

---

1. In addition to its motion for summary judgment, the government has moved in the alternative to dismiss for lack of jurisdiction.

2. All " § " or "section" references herein, unless otherwise noted, are to the Internal Revenue

Code ("I.R.C." or "Code") at title 26 of the United States Code (1994).

3. TEFRA distinguishes between "partnership items" and "non-partnership items." "Partnership items" are defined as "any item required to

at the partnership level, rather than in separate proceedings for each individual partner. *See* § 6221; *see also Slovacek v. United States*, 36 Fed.Cl. 250, 254 (1996) (citing H.R. Conf. Rep. No. 97–760, at 599–600 (1982), *reprinted in* 1982 U.S.C.C.A.N. 1190, 1371–72). The partnership-level proceeding is intended to determine conclusively how all "partnership items" will be reported on all partners' individual tax returns. *See Olson v. United States*, 172 F.3d 1311, 1316 (Fed. Cir.1999) (citing § 6222(a)).

The IRS began the Syn–Fuel partnership-level proceeding by giving notice of the impending audit of "partnership items" to the tax matters partner or "TMP" and other partners entitled to notice under the statute. *See* § 6223(a).[4] Subsequently, the IRS decided to disallow certain partnership losses and, as provided by TEFRA, issued a Final Partnership Administrative Adjustment ("FPAA") on March 11, 1988. *See id.* Several partners were not satisfied with the FPAA and elected to challenge the IRS' decision.[5] Dennis N. Brager, the attorney for the Prochorenkos in this case, was counsel for one of the challengers. Mr. Brager filed an action on August 2, 1988 on behalf of the other Syn–Fuel partner in the Tax Court. That petition was later consolidated with *Peat Oil and Gas Assocs., James Karr, A*

*Partner other than the TMP v. Commissioner*, T.C. Docket No. 30296–87.

During the pendency of the Tax Court litigation, Lawrence Dorr, an IRS appeals officer, notified the TMP on March 10, 1993 that the IRS and 24 Syn–Fuel partners had agreed to settle their tax liability regarding "partnership items" for an amount less than that provided for in the FPAA. Although notice had not been given until March 10, 1993, the settlement, which is now known as the "Craig settlement," was, in fact, entered on December 31, 1992. The IRS also sent a copy of its March 10, 1993 letter giving notice of the "Craig settlement" to Mr. Brager.[6]

Thereafter, on March 31, 1993, the Tax Court issued an opinion in *Peat Oil and Gas Assocs. v. Commissioner*, 100 T.C. 271, 1993 WL 95582 (1993), upholding the IRS' FPAA.[7] One month later, on April 30, 1993, Mr. Brager sent a letter to the non-settling partners he represented, including the Prochorenkos, informing them of the Tax Court's unfavorable decision. In his letter, Mr. Brager also explained to the partners that under section 6224(c)(2) of TEFRA and its implementing regulations they were entitled to settlements under terms consistent with the earlier "Craig settlement," should they make a request for such a settlement within 60 days.

---

quired to be taken into account for the partnership's taxable year ... to the extent regulations ... provide that ... such item is more appropriately determined at the partnership level than at the partner level." § 6231(a)(3). "Non-partnership items" are items that are not "partnership items" and have been interpreted "to depend on the unique circumstances of a partner or some other nonpartnership-wide variable." § 6231(a)(4); *Slovacek v. United States*, 40 Fed.Cl. 828 (1998).

4. Not all partners are entitled to notice under TEFRA. In partnerships with more than 100 partners, the IRS is not required to give notice of the beginning of a partnership proceeding or the final partnership administrative adjustment to partners with less than one percent interest in the profits of the partnership. *See* § 6223(b). The IRS is authorized to notify these partners by giving notice to the TMP. *See* § 6223(e).

5. Under section 6226(a), the TMP has 90 days to challenge the FPAA. If the TMP elects not to sue,

then any other partner may sue within 60 additional days. *See* § 6226(c)-(d).

6. The parties do not dispute that the "Craig settlement" was, in fact, a settlement agreement under section 6224(c)(2) that triggered the rights of other partners to request consistent terms.

7. The Tax Court previously considered the partnership's activities in a case involving individual limited partners' tax returns for the years 1981 and 1982, and had similarly upheld the IRS' disallowance of certain partnership deductions. *See Smith v. Commissioner*, 91 T.C. 733, 1988 WL 100255 (1988). The taxpayers in that case separately appealed the Tax Court decision. The Eleventh Circuit affirmed. *See Karr v. Commissioner*, 924 F.2d 1018 (11th Cir.1991). A divided panel of the Sixth Circuit reversed. *See Smith v. Commissioner*, 937 F.2d 1089 (6th Cir.1991). In *Peat Oil and Gas*, the Tax Court found that it was not bound by the Sixth and Eleventh Circuit decisions, because the Second Circuit was the proper venue for an appeal by the partnerships, which maintained principal places of business in New York. *See Ferguson v. Commissioner*, 29 F.3d 98, 100–01 (2d Cir.1994).

Under section 6224(c)(2) of TEFRA, once the IRS enters into a settlement agreement "with respect to partnership items" with one partner, other partners are entitled to request a settlement consistent with the original settlement agreement. Section 6224(c)(2) and its implementing regulations further provide that this right is available to those who request a consistent settlement within 150 days of notice of the FPAA to the TMP or within 60 days of the date on which the settlement was entered into, whichever is later. *See* § 6224(c)(2); Treas. Reg. § 301.6 224(c)–3T(c)(3)(Temporary) (1987). In this connection, the statute addresses only settlements of "partnership items" that are entered into prior to the issuance of the FPAA. *Id.*[8] The regulations, however, provide that partners seeking to settle on the same terms as other partners who settle during litigation on the FPAA may do so if they request a consistent settlement within 60 days of the settlement. *Id.*[9]

In his April 30th letter to the non-settling partners, Mr. Brager directed any clients who were interested in settling to reply by May 10, 1993 (60 days from the March 10, 1993 notice of the "Craig settlement"). Although disputing the timeliness of these requests, IRS appeals officer Dorr advised Mr. Brager in June 1993 that "in the interest of fairness," the IRS would accept settlements from partners who had requested a consistent settlement within 60 days after the IRS' March 10, 1993 notice to the TMP. The Prochorenkos do not dispute that they did not request a consistent settlement at that time or at any other time during the pendency of the litigation over the FPAA.

The non-settling partners (which by operation of law included the Prochorenkos) appealed the Tax Court's decision to the Second Circuit, which affirmed the Tax Court on July 13, 1994. *Peat Oil and Gas Assocs. v. Commissioner*, 100 T.C. 271, 1993 WL 95582 (1993), *aff'd sub nom. Ferguson v. Commissioner*, 29 F.3d 98 (2d Cir.1994). The Second Circuit decision became final on October 11, 1994, after the period within which to petition for certiorari had expired. Under TEFRA, unless a partner settles with the IRS under section 6224(c), the partner will be bound by the outcome of any litigation challenging the FPAA, even if that partner does not directly participate. *See Crnkovich v. United States*, 41 Fed.Cl. 168, 170 (1998) (citing § 6226(c)). Accordingly, following the conclusion of the partnership litigation in 1994, the IRS made assessments of tax and interest against the Prochorenkos and all other non-settling partners for tax years 1982 through 1985, based on the Second Circuit decision. *See* § 6225(a). The Prochorenkos paid these taxes in full.

Thereafter, in 1997 the Prochorenkos learned that another Syn–Fuel partner, Anthony Collitti and his wife, had entered into a settlement with the IRS, under which the Collittis apparently were allowed to settle their individual tax liability with regard to their partnership losses under terms similar to those granted under the "Craig settlement." The parties finalized the so called "Collitti settlement" on August 17, 1997.

The IRS has provided limited information regarding the "Collitti settlement" because of privacy concerns.[10] However, the court has

---

**8.** Section 6224(c)(2) states, in relevant part:

Except in the case of an election under paragraph (2) or (3) or section 6223(e) to have a settlement agreement described in this paragraph apply, this paragraph shall apply with respect to a settlement agreement entered into with a partner before notice of a [FPAA] is mailed to the [TMP] only if such other partner makes the request before the expiration of 150 days after the day on which such notice is mailed to the [TMP].

**9.** Treas. Reg. § 301.6224(c)–3(T)(c) (Temporary) Time and manner of requesting consistent settlements, provides, in relevant part:

(1) In general. A partner desiring settlement terms consistent with the terms of any settle-

ment agreement entered into between any other partner and the Service shall submit a written statement to the [IRS] office that entered into the settlement.

⁜    ⁜    *    *    ⁜    ⁜

(3) Time for filing a request. The statement shall be filed not later than the later of—

(i) The 150th day after the day on which the notice of [FPAA] is mailed to the [TMP], or

(ii) The 60th day after the day on which the settlement was entered into.

**10.** Under section 6103 of the Internal Revenue Code tax "[r]eturns and return information shall be confidential."

copies of correspondence between counsel for the Collittis and the IRS, which reveals that on May 4, 1995, Mr. and Mrs. Collitti wrote to the IRS seeking "to formalize the agreement that they believe[d] that they entered into by communicating their desire to accept the settlement offer to the attorney for the partnership." The Collittis explained that "[b]ecause the Taxpayers have not heard from the Syn–Fuel partnership or the Service regarding the settlement to which they signified their acceptance in 1993, the Taxpayers request that the Service formalize that settlement." Although the IRS disputed the Collittis' contentions, the IRS eventually agreed to settle with the Collittis on terms similar to the "Craig settlement." According to IRS appeals officer Paula Mixon, the Collitti settlement was being offered "through administrative grace only."

The Prochorenkos aver that on October 3, 1997, within 60 days following entry of the "Collitti settlement," they filed a timely request with the IRS for a consistent settlement, as provided for under the IRS regulations. The IRS denied the Prochorenkos' request on May 5, 1998, stating that "the terms upon which you seek to settle are no longer available."

Following the IRS' denial of their request for a consistent settlement, on June 1, 1998, the Prochorenkos filed claims for refunds for tax years 1982 through 1985, based on their request for a consistent settlement. The IRS denied these claims on August 21, 1998 and September 10, 1998. In its denial letter, the IRS stated that "[s]ince the partnership proceeding has been completed, we will not consider a request for abatement." The Prochorenkos then filed suit in this court on September 28, 1998, based on the same contentions raised before the IRS. The matter has been fully briefed and oral argument was held on November 19, 1999.

## DISCUSSION

### I. Summary Judgment

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lob-*

*by, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When the parties have filed cross motions for summary judgment, the court must evaluate each motion on its own merits. *See Thermocor, Inc. v. United States*, 35 Fed.Cl. 480, 485 (1996). In deciding whether summary judgment is appropriate, it is not the court's function "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249, 106 S.Ct. 2505. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 100 S.Ct. 2124; *see also United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Liberty Lobby*, 477 U.S. at 247–48, 106 S.Ct. 2505. Here, taking all of the Prochorenkos' factual assertions as true, as well as all reasonable inferences from those facts in their favor, the court finds as a matter of law that the "Collitti settlement" did not settle "partnership items" and therefore, the Prochorenkos are not entitled to a tax reduction based on section 6224(c)(2). Accordingly, summary judgment in favor of the United States is appropriate.

### II. Jurisdiction

Before turning to whether the Prochorenkos' have stated a claim, the court must first address the government's contention that the United States has not waived its immunity for refund actions arising from "partnership items" which are based on a claimed right to a consistent settlement. Jurisdiction to review refund actions involving "partnership items" is limited under the Code. In particular, section 7422(h) provides that "[n]o action may be brought for a refund attributable to partnership items ... except as provided in ... section 6230(c)." Section 6230(c)(1)(B), in turn, provides a limited waiver of sovereign immunity to allow for review of "partnership items" where the IRS "failed to allow a credit or to make a refund to the partner in the amount of the overpayment attributable

to the application to the partner of a settlement." The Prochorenkos argue that this court has jurisdiction under section 6230(c)(1)(B) to hear their claim.

The government argues that this court does not have jurisdiction under section 6230(c)(1)(B). The government argues that mandamus is the exclusive remedy for a partner seeking consistent terms with a 6224(c)(2) settlement. *See* Def.'s Mot. to Dismiss, or for Summ. J. at 21. In support of this contention defendant relies on *Monti v. United States,* 976 F.Supp. 157 (E.D.N.Y. 1997), *appeal docketed,* No. 97–6215 (2d Cir. 1997), which involved another Syn–Fuel partner seeking consistent settlement terms with the "Craig settlement." The *Monti* court concluded that the limited waiver of sovereign immunity provided for in section 6230(c)(1)(B) extends only to a partner seeking review of possible errors by the IRS in its treatment of "partnership items" based on an existing settlement between the IRS and that partner. *Id.*

The government asks this court to follow the *Monti* court and to dismiss the Prochorenkos' complaint on the grounds that section 6230(c)(1)(B) does not allow for actions by partners seeking consistent settlement terms. The court declines to follow this approach. The *Monti* court addressed the scope of section 6230(c)(1)(B) after the parties had agreed that the settlement with which the partners in that case were seeking consistent terms was a settlement of "partnership items" under section 6224(c)(2). Here, in contrast, the government disputes that the "Collitti settlement" is a settlement of "partnership items" under § 6224(c)(2). In addition, the plaintiffs agree that if the "Collitti settlement" is not a settlement of "partnership items" under section 6224(c)(2), they have no claim. Thus, the key question before this court is whether the "Collitti settlement," qualifies as a settlement of "partnership items" under section 6224(c)(2). For the reasons that follow, the court concludes that the "Collitti settlement" did not settle "partnership items" and therefore, is not a § 6224(c) settlement. Accordingly, the court does not have reason to examine the scope of section 6230(c)(1)(B). The court does have

jurisdiction to determine whether the plaintiffs have stated a claim for which relief can be granted in this court. *See Sammt v. United States,* 7 Cl.Ct. 274, 279 (1985); *see also Widdoss v. Secretary of Dept. of Health and Human Servs.,* 989 F.2d 1170, 1177 (Fed.Cir.1993).

### III. The "Collitti settlement" is not a settlement under section 6224(c)(2)

The Prochorenkos' claim in this case is based on the first sentence of section 6224(c)(2), which by its terms states that "[i]f the [IRS] enters into a settlement agreement with any partner with respect to partnership items ... the [IRS] shall offer to any other partner ... settlement terms ... consistent with those contained in such settlement agreement." § 6224(c)(2). The Prochorenkos read this first sentence of section 6224(c)(2) as granting an unqualified right to a consistent settlement when the IRS enters into a settlement that reduces another partner's tax liability for "partnership items" regardless of when the settlement occurs. The Prochorenkos argue that because the "Collitti settlement" diminished the Collittis' tax on "partnership items," that settlement, by necessity, settled "partnership items." In such circumstances, the Prochorenkos conclude, the IRS was required to accept their timely request for a consistent settlement with the "Collitti settlement."

The government argues that as a matter of law the settlement between the IRS and the Collittis was not a settlement agreement "with respect to partnership items" and therefore, did not trigger another partner's right to consistent terms. The government argues that section 6224(c)(2) must be read in context and that when read as a whole, it is clear that TEFRA does not allow the IRS to settle partnership items after litigation over the FPAA is completed (except in circumstances not relevant here). Accordingly, the IRS and the Collittis could not settle "partnership items." Rather, the government argues, the IRS and the Collittis could only settle whether the Collittis had timely elected to settle back in 1993, when the IRS was offering consistent terms. The government contends that as a matter of law, a settlement of the "election" issue is not a

settlement agreement "with respect to partnership items" and therefore the "Collitti settlement" did not give rise to a claim for consistent terms by other partners. The court agrees with the government.

The Prochorenkos base their argument on the first sentence of section 6224(c)(2). The court in construing the Prochorenkos' claim, however, must look at TEFRA as a whole. See Kmart v. Cartier, Inc., 486 U.S. 281, 291, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988); Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 51, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) (citations omitted); Yankee Atomic Elec. Co. v. United States, 112 F.3d 1569, 1576 (Fed.Cir.1997). When TEFRA is viewed as a whole, the court finds that as a matter of law the "Collitti settlement" did not settle "partnership items," but instead settled the Collittis' claim that they were entitled to a tax reduction because they had timely elected to settle back in 1993. The IRS' settlement of a partner's claim that the partner timely sought a consistent settlement during the period in which such settlements were being offered is not a settlement of "partnership items," even though the settlement ultimately results in a reduction of that partner's tax liability. The IRS is only authorized to settle "partnership items" before those items are "conclusively" determined by a court (except under circumstances not present here). To hold otherwise would undermine TEFRA's election scheme.

■ Under TEFRA's unified-partnership-proceeding scheme, partners must elect between settlement and litigation. Section 6224(c)(2) by its express terms allows partners to make a settlement election before the FPAA is issued. The IRS, by regulation, has extended the right of partners to elect to settle "partnership items" and request consistent settlements after the FPAA is issued.

See Treas. Reg. § 301.6224(c)–3T (Temporary). Once litigation on the FPAA has been finalized, however, TEFRA limits the IRS' settlement authority with respect to "partnership items." In particular, TEFRA section 6230(c)(4) makes plain that a judicial determination of "partnership items" will be "conclusive" and thus, binding on the IRS. TEFRA, however, recognizes an exception to this rule in the limited circumstance where the IRS has failed to provide the required notice to partners entitled to notice under the statute. Specifically, TEFRA provides that where the IRS fails to provide the required notice, a partner, upon receiving notice, may request a consistent settlement under section 6224(c)(2), even if a judgment on the FPAA has been entered. See § 6223(e). It is a well-settled principle of statutory construction that "[w]here Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied." Andrus v. Glover Constr. Co., 446 U.S. 608, 616–17, 100 S.Ct. 1905, 64 L.Ed.2d 548 (1980); see also 2A Norman J. Singer, Sutherland Statutory Construction, § 47.11 (5th ed.1992). In such circumstances, the IRS may only enter into a post-judgment settlement of "partnership items" where it failed to provide notice. In all other instances, a final judgment is conclusive and binding on the IRS.

■ When viewed against this backdrop it is clear that the IRS could not settle the Collittis' liability for "partnership items" after the litigation on the FPAA was concluded, but could only have settled the Collittis' claim that the IRS had failed to recognize their election to settle in 1993.[11] The IRS' decision to settle the Collittis' claim that they had timely requested a consistent settlement in 1993, therefore, did not reopen the Collittis' liability for "partnership items." The

11. The Prochorenkos reliance on recent IRS guidance to suggest that by allowing the Collittis to settle on terms slightly different from the "Craig settlement" the "Collitti settlement" triggers the rights of other partners to a consistent settlement is misplaced. See Field Serv. Adv. Mem. 199905001 (October 24, 1998). The guidance does not address the issue presented here—whether a settlement based on a parties' claim that they had previously requested consistent terms with an earlier settlement is itself a settlement of "partnership items" which would trigger rights in other partners to seek consistent settlements. The guidance indicates that slight variations in settlements of "partnership items" might give rise to a new period within which to request a consistent settlement. See id. The guidance does not address the IRS' settlement authority after a judgment on the FPAA. The guidance assumes that the tax liability for "partnership items" remains in doubt and therefore, the IRS is still free to settle "partnership items."

Collittis' liability for "partnership items" had been "conclusively" established by the Second Circuit decision as it has been for the Prochorenkos. The sole issue before the IRS was whether the Collittis had made a timely election to settle in 1993.

The Prochorenkos' contention that the court cannot determine the nature of the "Collitti settlement" without allowing for discovery into what the IRS staff believed they were settling with the Collittis is without merit. The undisputed evidence shows that the Collittis claimed that they sought a consistent settlement in 1993. The IRS staff's subjective view of the settlement with the Collittis is not legally relevant. Given the constraints on settlement authority under TEFRA, the IRS did not have the legal authority to settle "partnership items" with the Collittis after the Second Circuit judgment. Thus, as a matter of law, the IRS could only have settled the Collittis' claimed right to a consistent settlement stemming from their request in 1993. The "Collitti settlement" did not itself settle "partnership items."

Finally, the court will not construe the "Collitti settlement" as the IRS compromising "partnership items" post-judgment because to do so would mean that the IRS exceeded its settlement authority under TEFRA. *See Parsons v. United States*, 229 Ct.Cl. 335, 670 F.2d 164, 166 (1982) ("It is well established that there is a presumption that public officers perform their duties correctly, fairly, in good faith, and in accordance with law and governing regulations and the burden is on the plaintiff to prove otherwise.") (citing *United States v. Chemical Found.*, 272 U.S. 1, 14–15, 47 S.Ct. 1, 71 L.Ed. 131 (1926)).[12] Indeed, if the agree-

ment between the IRS and the Collittis was a settlement of "partnership items," it would have exceeded the IRS' statutory authority under TEFRA. In such circumstances, the "Collitti settlement" would be null and void, and would not provide the Prochorenkos with rights to a consistent settlement in any case. *See Dorl v. Commissioner*, 507 F.2d 406, 407 (2d Cir.1974) ("[T]he United States is not bound by the unauthorized acts of its agents.") (citing *Bornstein v. United States*, 345 F.2d 558, 562, 170 Ct.Cl. 576 (1965)). In short, the post-judgment "Collitti settlement" could not and did not trigger the rights of other parties under section 6224(c)(2).

## CONCLUSION

For all of the reasons noted above, the court finds as a matter of law that the "Collitti settlement" was not a "settlement with respect to partnership items." It necessarily follows that the "Collitti settlement" did not trigger the 60–day period within which to request a consistent settlement under section 6224(c)(2) and Treas. Reg. § 301.6224(c)–3T(c)(3)(Temporary). Therefore, the Prochorenkos' complaint based on its claim to a consistent settlement with the "Collitti settlement" fails to state a claim for which relief can be granted. Accordingly, the court **GRANTS** summary judgment in favor of the defendant. The court **DENIES** plaintiffs' motion for summary judgment. Each party to bear its own costs.

---

12. Moreover, the court notes that this result is consistent with the IRS regulation that generally prohibits the IRS from entering into settlements regarding tax liability once that liability has been established by a valid judgment. *See* Treas. Reg. § 301.7122–1(a). By virtue of the regulation, the IRS was bound by the Second Circuit decision upholding the IRS' FPAA and could not have reduced the Collittis' partnership tax liability based on questions relating to the IRS' treatment of "partnership items." The Prochorenkos' contention that Treas. Reg. § 301.7122–1(a) does not extend to section 6224(c)(2) settlements is misplaced. The Prochorenkos point out that

there is disagreement in the courts as to whether a settlement under section 6224(c) is a category of section 7122 settlement authority and therefore, subject to the procedural requirements of section 7122. Whether the IRS must follow the procedural requirements under section 7122 is distinct from whether the IRS may enter a settlement compromising tax liability after a final judgment. In the court's view, Treas. Reg. § 301.7122–1(a) confirms that the IRS may not enter into a settlement with respect to tax liability after a final judgment on the FPAA, unless it failed to provide the requisite notice.