**Joseph MONTI and Tita Monti, Plaintiffs–Appellants,**

v.

**UNITED STATES of America, Defendant–Appellee.**

**Docket No. 97–6215.**

United States Court of Appeals, Second Circuit.

Argued: March 1, 2000

Decided: Aug. 17, 2000

---

John W. Hughes, New York, NY, for Plaintiffs–Appellants.

Teresa T. Milton, Attorney, Tax Division, Department of Justice, Washington, DC (Loretta C. Argett, Assistant Attorney General, Washington, DC, and Teresa E. McLaughlin, Attorney, Tax Division, Department of Justice, Washington, DC, on the brief; Zachary W. Carter, then-United States Attorney for the Eastern District of New York, of counsel), for Defendant–Appellee.

Before: McLAUGHLIN, SACK, and KATZMANN, Circuit Judges.

SACK, Circuit Judge:

The question presented by this appeal is whether a partner's claim for tax treatment consistent with that accorded other partners in a settlement with the Internal Revenue Service is a claim for a refund attributable to a "nonpartnership item" that properly can be the subject of a suit in a federal district court, or is a claim for a refund attributable to a "partnership item" about which suit in federal district court is barred. We hold that it is attributable to a nonpartnership item and that this action asserting such a claim was therefore properly instituted in the district court.

Plaintiffs–Appellants Joseph and Tita Monti, a married couple, appeal from the dismissal of their federal income tax refund action by the United States District Court for the Eastern District of New York (Joanna Seybert, *Judge*). The district court held that it lacked jurisdiction over the Montis' claim because the United States has not waived sovereign immunity for refund claims attributable to "partnership items" except in very limited circumstances not applicable to the Montis' case. We hold that a refund action based on the Internal Revenue Service's failure to offer consistent settlement terms to nonsettling partners of a partnership is not attributable to a "partnership item" for purposes of the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), Pub.L. No. 97–248, 96 Stat. 324, and that the United States has therefore waived sovereign immunity with respect to such an action. Accordingly, we reverse and remand the case to the district court for adjudication of the Montis' refund action on the merits.

## BACKGROUND

*Overview*

The Montis were limited partners in a partnership named Syn–Fuel Associates

("Syn–Fuel"). They claimed individual federal income tax deductions based on their partnership interests in Syn–Fuel for the years 1982 through 1985. In 1987 the Internal Revenue Service (the "IRS") audited Syn–Fuel pursuant to the provisions of TEFRA and, in a Final Partnership Administrative Adjustment ("FPAA"), disallowed many of the deductions. Syn–Fuel appealed the FPAA to the United States Tax Court, where it was affirmed. *See Peat Oil and Gas Assocs. v. Commissioner*, 100 T.C. 271, 1993 WL 95582 (1993). This Court then affirmed the Tax Court's ruling in *Ferguson v. Commissioner*, 29 F.3d 98 (2d Cir.1994) (per curiam).

When the IRS enters into a settlement agreement regarding partnership taxes with one partner, it is required by TEFRA to "offer to any other partner who so requests[,] settlement terms ... which are consistent with those contained in [the] settlement agreement." I.R.C. § 6224(c)(2). During the preparation of the FPAA and the subsequent litigation, many individual Syn–Fuel partners settled with the IRS. The Montis did not. The Montis' tax treatment was therefore resolved through the FPAA and the subsequent litigation. They have paid the taxes assessed to them according to the FPAA, but are now suing for a refund reflecting the consistent treatment that they assert is due to them.

In seeking a refund, the Montis allege that they were never given the statutorily required notice of the terms of one of the settlements entered into by several limited partners (the "Craig Settlement"), that the time during which they were required to file for treatment equivalent to that given to other Syn–Fuel partners under the Craig Settlement therefore never began to run, and that their current request for settlement terms consistent with the Craig Settlement therefore remains timely. The terms of the Craig Settlement are far more favorable to the Montis than those resulting from the FPAA and the subsequent related litigation.

## Sovereign Immunity

■ The doctrine of sovereign immunity prevents suits against the United States unless the United States has waived the immunity. *See United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). The government has done so broadly with respect to federal income tax refund actions. *See* 28 U.S.C. § 1346(a)(1); *United States v. Forma*, 42 F.3d 759, 763 (2d Cir.1994). There are certain kinds of refund actions, however, with respect to which the government has not waived sovereign immunity. Relevant here: "No action may be brought for a refund attributable to partnership items (as defined in [I.R.C.] section 6231(a)(3)) except as provided in section 6228(b) or section 6230(c)." I.R.C. § 7422(h). Thus, if the refund the Montis seek is attributable to a partnership item other than those excepted by the statute, their action was correctly dismissed by the district court.

## Statutory Framework Under TEFRA

Partnerships are generally not taxable entities. "[T]he income and expenses of the partnership normally 'flow through' to the several partners, who remain ultimately responsible for filing their own taxes." *Transpac Drilling Venture 1982–12 v. Commissioner*, 147 F.3d 221, 223 (2d Cir. 1998). Until the enactment of TEFRA in 1982, administrative and judicial proceedings related to partnership income were therefore conducted at the level of the individual partner. If the IRS took issue with the partnership's books or returns, it addressed the issue with each partner individually. *See Chimblo v. Commissioner*, 177 F.3d 119, 121 (2d Cir.1999).

Because this system proved inefficient and often led to inconsistent results, "[u]nder TEFRA, one proceeding determines how partnership items will be reported on all of the partners' individual returns. The statute requires partners, on their personal returns, to treat partnership items consistently with the items' treatment on the partnership return." *Olson v. United*

*States,* 37 Fed. Cl. 727, 731 (1997), *aff'd,* 172 F.3d 1311 (Fed.Cir.1999). Individual taxpayers still *pay* the relevant taxes—the partnership does not pay income tax—but *determinations* as to the amount of tax attributable to partnership items are made at the partnership level. *See Randell v. United States,* 64 F.3d 101, 103–04 (2d Cir.1995), *cert. denied,* 519 U.S. 815, 117 S.Ct. 65, 136 L.Ed.2d 26 (1996).

TEFRA defines a partnership item as follows:

> The term "partnership item" means, with respect to a partnership, any item required to be taken into account for the partnership's taxable year under any provision of subtitle A to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle, such item is more appropriately determined at the partnership level than at the partner level.

I.R.C. § 6231(a)(3). A "nonpartnership item" is defined as "an item which is (or is treated as) not a partnership item." I.R.C. § 6231(a)(4).

If the IRS decides to examine a partnership's tax return, each partner can opt either to participate in the proceeding or seek to settle. Absent a settlement with all the partners, the proceeding results in an FPAA that must be sent to the partnership's Tax Matters Partner ("TMP") and to all "notice partners" who, because of the magnitude of their interest in the partnership are, by statute, entitled to direct notice from the IRS. *See* I.R.C. § 6223(a)(2). The TMP is responsible for notifying non-notice partners, such as the Montis, of the FPAA. The FPAA may then be appealed by the TMP or any notice partner to the Tax Court, a federal district court, or the Court of Claims, *see Chimblo,* 177 F.3d at 121, with all other partners who have not settled being treated as parties to such an action, *see* I.R.C. § 6226(c). Unless a partner has opted out of the FPAA process by settling, that partner is bound by the results of this process. Because the FPAA determines the tax treatment of partnership items, a partner cannot bring a refund action attributable to anything litigated during the FPAA process. Allowing such lawsuits would undercut TEFRA's goal of consolidating the treatment of partnership items at the partnership level. *See Kaplan v. United States,* 133 F.3d 469, 473 (7th Cir.1998) ("TEFRA requires that all challenges to adjustments of partnership items be made in a single, unified agency proceeding; indeed, this is the key component of TEFRA that yields the desired benefits of economy and consistency.").[1]

A partner who settles with the IRS under I.R.C. § 6224(b) thereby removes him or herself from the partnership-level FPAA proceedings. But the Internal Revenue Code provides that if the IRS enters into such a settlement with one or more partners, it is required to "offer to any other partner who so requests[,] settlement terms ... which are consistent with those contained in [the] settlement agreement." I.R.C. § 6224(c)(2). In other words, the IRS cannot play favorites; if one partner settles, it must offer the same settlement terms to all partners. If the IRS does settle the tax liability of a partner it must, under Tax Court Rule 248(c)(2), serve notice of the settlement on the partnership's TMP within seven days of executing the agreement. The TMP is then responsible for notifying the other partners of the settlement. *See* I.R.C.

---

1. By statute, a partner may bring suit for a refund attributable to a partnership item, however, if "the Secretary failed to allow a credit or to make a refund to the partner in the amount of the overpayment attributable to the application to the partner of a settlement", I.R.C. § 6230(c)(1)(B), or if the partner's request for an administrative adjustment is denied, *see* I.R.C. § 6228(b). These suits are permitted because the issue of how the partnership's tax status applies to a particular partner will vary from partner to partner. If the IRS makes a computational mistake when applying the FPAA to an individual partner, or denies a partner's request for an adjustment, allowing that partner to sue for a refund is thus consistent with the goals of TEFRA. *See Kaplan,* 133 F.3d at 472–73.

§ 6223(g); 26 C.F.R. § 301.6223(g)–1T(b)(1)(iv). Thereafter, any partner may request settlement terms consistent with those accorded to the settling partner or partners at any time before the "later of— (i) The 150th day after the day on which the notice of final partnership administrative adjustment is mailed to the tax matters partner, or (ii) The 60th day after the day on which the settlement agreement was entered into." 26 C.F.R. § 301.6224(c)–3T(c)(3). When a partner settles with the IRS with respect to an item, that item ceases to be a "partnership item" and becomes a "nonpartnership item" with respect to the settling partner. *See* I.R.C. § 6231(b)(1)(C).

*Factual Background*

The Montis acquired their partnership interest in Syn–Fuel in 1982. They claimed deductions of between $200,000 and $245,000 on each of their 1982, 1983, 1984 and 1985 joint tax returns. The IRS audited Syn–Fuel in 1987. It disallowed the deductions Syn–Fuel had claimed and which its partners had correspondingly claimed on their own behalf. On March 11, 1988, the IRS issued an FPAA outlining the tax treatment that would be accorded to the partnership. On August 2, 1988, Syn–Fuel's TMP appealed the FPAA to the Tax Court.

In mid–1992, Dennis Brager, a lawyer who represented the Montis and some of the other Syn–Fuel partners in their Syn–Fuel dealings, negotiated the Craig Settlement on behalf of other Syn–Fuel partners with Lawrence Dorr, the IRS Appeals Officer assigned to the case. Although negotiations for the Craig Settlement were completed in mid–1992, the settling partners did not formally enter into it until December 1992. Under Tax Court Rule 248(c)(2), the IRS had seven days thereafter in which to notify Syn–Fuel's TMP of the Craig Settlement. The IRS failed to do so. Indeed, the IRS did not formally notify anyone about the settlement until March 10, 1993, when it sent a letter to Brager and the Syn–Fuel TMP stating that the Craig Settlement had been consummated seventy days earlier, on December 31, 1992.

After receiving the March 10, 1993 letter notifying his clients of the Craig Settlement, Brager had a conversation with Dorr. Dorr told Brager that Brager's clients, other than those who were part of the Craig Settlement, had only sixty days after the date of the Craig Settlement to request consistent terms, and that those sixty days had expired on or about March 1, 1993—sixty days after December 31, 1992 and nine days before Dorr's letter to Brager officially noting the fact of the settlement. The IRS thus took the position that the Montis' period for requesting consistent terms had ended nine days before they were notified through their counsel or the TMP that it had begun.

On April 1, 1993, the Tax Court upheld the FPAA, *see Peat Oil and Gas Assocs. v. Commissioner*, 100 T.C. 271, 1993 WL 95582 (1993), making the terms of the Craig Settlement, which were more favorable to partners than were the terms of the FPAA, attractive to non-settling partners such as the Montis. On April 30, 1993, Brager therefore wrote to his clients advising them that although the IRS had taken the position that the period for requesting terms consistent with the Craig Settlement was over, he personally believed that all Syn–Fuel partners were entitled to consistent terms and recommended that they request them. Brager included a form for requesting consistent terms with his letter and instructed his clients to fill it out by May 10, 1993, which he figured would be sixty days after March 10, 1993, the date of the IRS letter formally giving notice of the Craig Settlement. Brager made this recommendation despite the fact that the IRS's stated position was that any requests received after March 1, 1993 would be untimely. The Montis did not execute the form requesting consistent terms.

On June 10, 1993, Dorr wrote another letter to Brager. He confirmed his earlier

position but said that "in the interest of fairness" the IRS would accept requests for consistent terms received within sixty days of the March 10 letter. But by the time of the June 10 letter, that period had also expired. In other words, the IRS was saying on June 10 that in the interest of "fairness" the Montis would have until May 10 to request consistent terms. Only those partners who had followed Brager's advice and ignored the IRS's earlier statements would thus be entitled to consistent terms. The Montis and any partners similarly situated were, as far as the IRS was concerned, out of luck.

Nearly a year later, on May 20, 1994, this Court affirmed the Tax Court's decision finalizing the FPAA's treatment of Syn–Fuel partnership items. *See Ferguson v. Commissioner*, 29 F.3d 98 (2d Cir. 1994) (per curiam). On June 28, 1994, the IRS therefore sent the Montis a notice of computational adjustment informing them how much they owed in back taxes as a result of the partnership's tax treatment under the FPAA.

Five months later, on December 2, 1994, the Montis finally requested settlement terms consistent with the Craig Settlement and simultaneously paid all the back taxes assessed against them by the IRS as a result of the FPAA proceedings. They then claimed refunds for the amounts paid beyond what they would have had to pay under the terms of the Craig Settlement. On December 9, 1994, the IRS denied the Montis' request for consistent terms on the ground that their request was untimely because it had been filed more than sixty days after the execution of the Craig Settlement.

Having been turned down for consistent treatment by the IRS, the Montis brought the current refund action in the United States District Court for the Eastern District of New York. The government moved to dismiss, arguing that because the action was for a refund "attributable to partnership items" under I.R.C. § 7422(h) that did not fall within the exception for overpay-

ments "attributable to the application ... of a settlement" under I.R.C. § 6230(c)(1)(B), the United States had not waived sovereign immunity with respect to the suit. The district court agreed and dismissed the action for lack of subject matter jurisdiction. *See Monti v. U.S.*, 976 F.Supp. 157 (E.D.N.Y.1997).

On appeal, the Montis argue that the denial of their statutory right to request consistent terms is not a partnership item and that the refund they seek is therefore not attributable to a partnership item. In the alternative, they argue that if their right to request consistent terms is a partnership item their refund is nevertheless one "attributable to the application ... of a settlement" to them. They further assert that we should grant summary judgment in their favor because neither they nor the TMP has ever received notice of a sixty-day period in which to request consistent terms. Because such a sixty-day period has not begun to run, they argue, they are entitled, as a matter of law, to terms consistent with those contained in the Craig Settlement.

## DISCUSSION

### I. Standard of Review

■ The issue that we decide on this appeal, whether the complaint was properly dismissed pursuant to Fed.R.Civ.P. 12(b)(1) because the United States has not waived sovereign immunity with respect to the claim asserted, is one of pure statutory interpretation. We therefore review the decision of the district court *de novo*. *See Up State Fed. Credit Union v. Walker*, 198 F.3d 372, 374 (2d Cir.1999).

### II. Is the Claim Attributable to a Partnership Item?

■ The Montis argue that they had a right to settlement terms consistent with those in the Craig Settlement. The IRS denied them that right, they assert, by initially failing to give them notice of the Craig Settlement and by subsequently tell-

ing them that their time for requesting consistent terms had expired. They argue that their claim that they were deprived of their right to consistent terms is not attributable to a partnership item because a decision on that issue depends on facts unique to them and unconnected with the resolution of partnership-wide issues. They conclude that because the refund they seek is attributable to this nonpartnership item the district court had jurisdiction over their claims. We agree.

Partnership items are those "more appropriately determined at the partnership level than at the partner level." I.R.C. § 6231(a)(3). Since the question of whether a particular partner has properly been offered and is entitled to consistent terms depends on facts specific to that partner and his or her dealings with the IRS, there is no apparent reason why determination of the item is "more appropriate[ ]" at the partnership level.

Moreover, "[t]he items ... more appropriately determined at the partnership level" are set forth in the regulations implementing TEFRA. See 26 C.F.R. § 301.6231(a)(3)–1. They include the income, gains, losses, deductions, and credits of the partnership, and distributions received and contributions made by it. See id. The right of individual partners to request consistent settlement terms, as provided for in I.R.C. § 6224(c)(2), is not on the list.

Finally, under TEFRA, a partnership item is "any item required to be taken into account for the partnership's taxable year under any provision of subtitle A [of the Internal Revenue Code]." I.R.C. § 6231(a)(3). A partner's right to consistent settlement terms is located in subtitle F.

The alleged deprivation of the Montis' right to consistent terms is thus not a partnership item. Their claim for a refund is attributable to this nonpartnership item, not a partnership item, such as the amount of income of or the propriety of deductions taken by Syn–Fuel.

At some level of generality, of course, most refund actions involving the taxation of a partnership can be described as seeking a refund "attributable to partnership items," I.R.C. § 7422(h). In the absence of partnership income or loss, both partnership items, there would be no taxes in the first place; in the absence of claimed partnership deductions, perhaps no FPAA. But such a reading of the phrase "attributable to partnership items" would make most or all refund claims arising out of the taxation of partnerships, even those entirely about and entirely dependent on facts peculiar to a single partner, claims for refunds "attributable to partnership items." To blur or erase in that manner the distinction between proceedings involving partnership items and those involving nonpartnership items would be contrary to the system of separate treatment of partnership and nonpartnership issues Congress established by enacting TEFRA.

The Internal Revenue Code provides that with exceptions not relevant to this issue, "no action may be brought for a refund attributable to partnership items." I.R.C. § 7422(h). We conclude that the Montis' action is not "for a refund attributable to partnership items" and therefore may be brought in federal district court.

### III. The Opinion of the District Court

The district court held that the right to consistent settlement terms is a partnership item. See Monti, 976 F.Supp. at 161–62. Its reasons for doing so are unpersuasive.

First, as the district court observed, I.R.C. § 6224(c)(2) does refer to a partner's right to enter into an agreement consistent with the terms of a settlement made "with respect to partnership items." See id. at 161. But it does not follow, as the district court held, that the § 6224(c)(2) right is itself a partnership item. The § 6224(c)(2) right is an individual right to consistent terms. One part-

ner's right to settlement terms consistent with those granted to another partner is not a partnership item, because the question posed requires consideration of the relationship between one partner's situation and another's and the individual's, rather than the partnership's, communications with the IRS. The facts needed to determine whether consistent terms were offered are facts about the partner, not facts about the partnership.

Second, the district court acknowledged that settlement agreements differ from partner to partner but reasoned that that does not indicate the involvement of a nonpartnership item because "at the partnership level proceeding, [too,] each partner will owe a different amount in taxes based on [his or her] pro rata share of the partnership." *Monti,* 976 F.Supp. at 161. But at the partnership-level proceeding, determinations are made as to the tax treatment of partnership items; that treatment is then applied to the partners on a partner-by-partner basis depending on the interest of each in the partnership. Determinations as to whether individual partners received proper notice are not made on a partnership basis and then applied to individual partners. They are made on a partner-by-partner basis.

Third, the district court feared that allowing partners to settle "outside the partnership level would ... undermine the consistency and uniformity of resolving all the partners['] claims of partnership items together." *Id.* at 162. But whenever the IRS settles with an individual partner, that partner is treated differently than the partners who choose not to settle. That does not undercut TEFRA's uniformity goal. The statute creates a system under which all partnership items are resolved in a single proceeding *unless* a partner settles with the IRS and thereby withdraws from the proceeding. The fact that individual partners may be given the opportunity to withdraw from the FPAA process is not inconsistent with the principle that partnership items are to be treated uniformly in the process.

Nor do plaintiffs like the Montis get "an unlimited number of bites at the apple," as the district court concluded, *id.* at 162 n. 2, if the right to consistent terms is a nonpartnership item. If the IRS had simply fulfilled the requirement that it give partners timely notice of settlement, the Montis would have been compelled to decide within a specified time period either to request treatment consistent with the Craig Settlement terms or be bound by the FPAA. It was the IRS's alleged failure to give notice before the conclusion of the FPAA and the litigation that confirmed it that had the effect of allowing the Montis to track the FPAA litigation and compare its results to the terms of the Craig Settlement before choosing whether to request consistent treatment. True, in this case the Montis may be allowed to place a bet on a race that has already been run, but that is only because the IRS never bothered to announce last call.

## IV. The *Prochorenko* Litigation

Finally, we take note of another lawsuit stemming from the Syn–Fuel FPAA and the Craig Settlement that also involved Brager clients. *See Prochorenko v. United States,* 45 Fed. Cl. 494 (2000). A set of Syn–Fuel partners, a married couple named Collitti, made a claim strikingly similar to the Montis' claim here: On the basis of facts peculiar to them, the Collittis asserted that they were entitled to terms consistent with the Craig Settlement. Instead of litigating their claim to judgment as did the Montis, however, the Collittis settled it with the IRS on terms similar to those contained in the Craig Settlement. *See id.* at 497. In 1997, yet another couple of Syn–Fuel partners, the Prochorenkos, learned of the IRS's agreement with the Collittis and sought consistent treatment, not with the Craig Settlement, but with the Collitti settlement. *See id.*

The IRS argued that the Prochorenkos were not entitled to treatment consistent

with the Collitti settlement because (i) partners are only entitled to terms consistent with those contained in "a settlement agreement ... with respect to partnership items," I.R.C. § 6224(c)(2), and (ii) the settlement of the Collittis' claim for consistent treatment was *not* a "settlement agreement ... with respect to partnership items." In support of these propositions, the IRS asserted that

> [a] dispute over whether there is a right to consistent terms [i.e., the Collittis's dispute with the IRS] is not a dispute over a "partnership item" because each partner's claim would depend upon facts peculiar to that partner—e.g., whether that partner had made a timely request for an offer of consistent terms.

The Court of Claims, ruling in favor the IRS, agreed. *See id.*

The argument made by the IRS in *Prochorenko* is difficult to square with the argument made by the IRS here. Both the Collittis and the Montis had what the IRS described in the *Prochorenko* litigation as "a dispute [with the IRS] over whether [they have] a right to [terms] consistent" with the Craig Agreement. If the Collittis' settlement of that dispute was *not* a settlement "with respect to partnership items," I.R.C. § 6224(c)(2), then it would appear that the Montis' attempt to resolve a virtually identical dispute in court is not an action for "a refund attributable to partnership items", I.R.C. § 7422(h). There is a difference, of course, between the words "with respect to partnership items" and the words "attributable to partnership items," but we fail to see any significance in that difference here. The Court of Claims's conclusion that the Collittis' settlement of their claim for treatment consistent with the Craig Settlement was not a settlement "with respect to partnership items" thus reinforces our conclusion that the Montis' claim for treatment consistent with the Craig Settlement was not made in an action for "a refund attributable to partnership items."

## V.  Summary Judgment

The parties each claim that if the district court had subject matter jurisdiction, as we now hold that it did, they are entitled to summary judgment. Because it granted the government's motion to dismiss, the district court never reached that issue. We think it the better course for the district court to decide the issue on a complete record and full briefing rather than for us to do so in the first instance. *See Aardwoolf Corp. v. Nelson Capital Corp.,* 861 F.2d 46, 49 (2d Cir.1988). We remand the case to the district court for that purpose.

## CONCLUSION

The logic of deeming a dispute over the right to consistent terms a dispute over a nonpartnership item is compelling.

> Because the purpose of [I.R.C.] section 7422(h) [depriving federal district courts of subject matter jurisdiction in tax refund suits attributable to partnership items] is evidently to prevent an individual partner's refund action from interfering with the partnership level determination of partnership items, that bar becomes unnecessary when the partnership level proceeding has in some sense concluded.

*Alexander v. United States,* 44 F.3d 328, 331 (5th Cir.1995). The Montis' request for terms consistent with the Craig Settlement would not "interfer[e] with the partnership level determination of partnership terms." *Id.* They do not seek to relitigate, or renegotiate, the tax treatment of any partnership items. They want only to argue that their request for consistent settlement terms was timely because they never received adequate or timely notice. That is not an issue that can be resolved at the partnership level.

For the foregoing reasons, we reverse the district court's judgment dismissing this action for want of subject matter jurisdiction and remand for the district court to entertain and decide the parties' cross-

motions for summary judgment on the merits.