John E. CLARK and Catherine
P. Clark, Plaintiffs,

v.

UNITED STATES of America,
Defendant.

No. CIV.A.1:98–CV–1425–JOF.

United States District Court,
N.D. Georgia,
Atlanta Division.

Feb. 28, 2001.

James Alan Gober, Arnall Golden & Gregory, Atlanta, GA, Stuart A. Smith, phv, Law Offices of Stuart A. Smith, New York City, for plaintiffs.

Mary Christine Roemer, Robert David Powell, Office of United States Attorney, Northern District of Georgia, Atlanta, GA, Michael N. Wilcove, phv-USDOJ, U.S. Department of Justice, Tax Division, Washington, DC, for defendant.

### ORDER

FORRESTER, District Judge.

This matter is before the court on Defendant's motion for summary judgment [33] and Defendant's motions to supplement same [35, 43].

## I. Statement of the Case

### A. Procedural History

Plaintiffs, John E. Clark and Catherine P. Clark, brought the instant action against the United States to recover federal income tax, interest, and penalties which they assert were illegally assessed and collected for calendar years 1979, 1980, 1982, 1983, 1984, and 1985. Many of the relevant facts and the procedural background were set forth fully in an Order of this court dated September 21, 1999, ruling on Defendant's partial motion to dismiss and partial motion for summary judgment, and need not be repeated in detail here. *See Clark v. United States,* 68 F.Supp.2d 1333, 1351 (N.D.Ga.1999). The gravamen of Plaintiffs' complaint involves their limited partnership interest in Masters Recycling Associates ("Masters") and the final partnership administrative adjustment ("FPAA") conducted pursuant to the Tax

Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), Pub.L. 97–248, 96 Stat. 324 (1982), codified in the Internal Revenue Code ("Code"), 26 U.S.C. §§ 6221–33, which ultimately resulted in the imposition of the assessments, interest and penalties that they seek to recover in this suit.

Plaintiffs invested $25,000 in a limited partnership interest in Masters and claimed $48,563 in tax savings. In an audit of Masters' partnership returns, the Internal Revenue Service ("IRS") determined that the losses claimed by Masters were not incurred in a trade or business or in an activity entered into for profit, disallowed all losses claimed by Masters on its federal partnership returns for 1982–1985, and readjusted to zero the value of Masters' property that was subject to the regular investment tax credit and the business energy investment tax credit in 1982. Through its Tax Matters Partner ("TMP"), Sam Winer[1], Masters filed a petition with the Tax Court challenging these audit determinations. The IRS answered and prayed that the Tax Court deny Masters' petition and approve its determinations as set forth in the FPAA. (Def.Mot.S.J., Ex. B). Subsequently, the IRS moved the Tax Court for an entry of decision, representing that it had entered into a settlement agreement with Winer and attaching a decision document reflecting said agreement. (*Id.* at Ex. C & D). On February 23, 1994, the Tax Court entered a decision readjusting to zero the partnership items of Masters for the taxable years 1982–85. (Def. Mot. to Supplement Mot. S.J.). However, nowhere in this decision does the Tax Court reveal the basis for its readjust-

---

1. Plaintiffs' contentions that the disallowances and assessments were barred by the statute of limitations and that Winer was barred from acting as the TMP and from filing such petition in the Tax Court by an injunctive order, issued by the United States District Court for the Middle District of Flori-

da at the behest of the government on February 18, 1986, and thus that the Tax Court lacked jurisdiction to enter such decision were decided adversely to Plaintiffs in *Davenport Recycling Assocs. v. Commissioner,* 220 F.3d 1255 (11th Cir.2000).

ments. (*See id.*) That is, the Tax Court does not state that the items were readjusted to zero because it found that Masters was not engaged in a trade or business or in an activity for profit or because it found some other reason supporting the readjustments.

After the Tax Court readjusted the values of the partnership items, the IRS assessed varying amounts of federal income taxes, interest, and penalties against Plaintiffs. Plaintiffs paid the assessments and filed this action seeking a refund of the assessments. In the complaint, Plaintiffs claim that they overpaid income taxes for the years listed above and overpaid penalties for the year 1982, and they demand judgment in their favor for these amounts plus interest. This court's Order of September 21, 1999 dismissed several of Plaintiffs' claims. *Clark*, 68 F.Supp.2d at 1351. However, this court allowed Plaintiffs to proceed on their claims for refund of additions to tax for negligence and for valuation overstatement, assessed at the individual partner level, pursuant to 26 U.S.C. §§ 6653(a) and 6659 and on their claim for refund of the penalty rate of interest assessed pursuant to 26 U.S.C. § 6621(c), despite Defendant's contention that 26 U.S.C. § 6224(c)(2) had been invoked erroneously by Plaintiffs. *Id.*

On May 31, 2000, Defendant moved for summary judgment on the remaining claims, contending that (1) Plaintiffs are bound by the decision entered by the Tax Court, (2) Plaintiffs are liable for the negligence penalties as a matter of law, (3) the Commissioner did not abuse his discretion by declining to waive the overvaluation penalties, (4) the increased rate of interest for tax-motivated transactions is mandated by law, and (5) the audit assessments for 1984 and 1985 have been abated and refunds have been issued to Plaintiffs. Plaintiffs objected, maintaining that (1)

they reasonably relied on the advice of their experts and that such advisers need not be experts in the technology of a particular investment in order to justify abatement of the negligence penalty and (2) their reliance upon their advisers was reasonable and in good faith because each of the advisers was competent and disinterested. Plaintiffs admitted, however, that with respect to their federal income tax liability for 1984 and 1985, the IRS assessed no negligence or overvaluation penalties on account of their investment in Masters Recycling and abated the tax and interest assessed on account of the investment. (Pl. Resp. to Def. Statement of Mat. Facts, ¶ 37). On February 7, 2000, the parties presented oral arguments to this court regarding issues concerning the negligence penalty.

### B. Facts [2]

On its partnership tax return for 1982, Masters asserted that it began business on December 29, 1982, and it reported a basis of $7,000,000 in property subject to investment credit. (Def.Mot.S.J., Ex. E). In December 1982, Plaintiffs purchased a 2.75% interest in Masters, which equaled a proportionate basis of $192,500 and is the amount used by Plaintiffs in computing the tax credits that they claimed with respect to the investment. (J. Clark.Dep., Ex. 2, p. 61). Mr. Clark testified that he was more focused on the investment as a profit-making venture and that the tax benefits were secondary aspects derived from the government's interest in encouraging these types of investments in the early 1980s. (*Id.* at 54–55). He received several pieces of correspondence from Winer detailing that the recyclers were in use or in the process of being placed with Honda of America, Poly Foam, Inc., Handi Kup, and Mitsubishi Electronics. (*Id.* at Exs. 10, 12,

**2.** Defendant's motions to supplement are GRANTED.

13). The partnership return for 1982 does not show that Masters received any revenue from its business activities. (Def.Mot.S.J., Ex. E). However, the Tax Court decision reveals that Masters reported gross receipts of $325,000 for 1983 and $975,000 for both years 1984 and 1985. (Def. Mot. to Supplement Mot. S.J.).

Mr. Clark graduated from the University of Georgia with a bachelor of business administration degree, and at one point, he was the developer for a retirement community and was in charge of negotiating its financing, which involved a $36,360,000 public bond offering. (J. Clark.Dep., p. 77). Before investing in Masters, Mr. Clark read the private offering memorandum and received professional advice from James E. Dorsey, a corporate partner in the Atlanta law firm of Arnall, Golden & Gregory, Marc Heiweil, an investment adviser who was a former lawyer in Dorsey's firm, and Cleburne E. Gregory, Dorsey's tax partner. Mr. Clark testified that Dorsey looked up the credentials of the attorney firm that attested to the prospectus, finding that its reputation was excellent. (Id. at pp. 37–38). He further testified that after he made the investment in Masters, he spoke to Winer several times to check on the progress of the partnership and of his investment. (Id. at 39–40, Exs. 5, 7, & 14). However, he admitted that he did not consult with anyone who worked in the plastics industry about the investment.

*The Masters Offering Memorandum*

The prospectus is dated November 24, 1982 and asserts that Masters was organized on November 10, 1982 as a limited partnership that is to be engaged in the recycling of plastics.[3] (Def. Mot. S.J., Ex.

F at pp. 224, 228). The offering memorandum projected the average yearly output for the recyclers but stated that the machines had no history of commercial use and that there was no established market for their sale, lease, or license. Even though PI was to manufacture the recyclers and make the recycled plastic pellets from the recycled plastic and market these pellets, PI had no experience in manufacturing or operating the recyclers or in using or selling the pellets.

The memorandum cautioned that the partnership was a newly formed entity with no operating history. It contained the opinions of Samuel Burstein, a Professor of Mathematical Sciences at New York University (Id. at 312), and Stanley Ulanoff, a Professor of Marketing at Baruch College in New York. (Id. at 304). Burstein opined that the recycling machines would be reliable and capable of performing their technical functions. (Id. at 327). Ulanoff opined that the price and rent to be paid for the recycling machines and the anticipated joint venture profit projections were fair and reasonable. (Id. at 311).

## II. Discussion

### A. § 6653 Negligence Penalty

Former § 6653[4] imposed a penalty equal to five percent of the underpayment of taxes if any part of the underpayment was due to negligence or intentional disregard of rules and regulations. Section 6653(a)(1). For the years relevant to the instant case, it further imposed an addition to tax equal to fifty percent of the interest payable on the underpayment. Section 6653(a)(2). Negligence is not specifically

---

**3.** Essentially, the machines recycle steam chest molded expanded polystyrene into reusable resin pellets. (Def. Mot. S.J., Ex. F at 242–43).

**4.** Section 6653 was repealed by § 7721 of the Omnibus Budget Reconciliation Act of 1989, Pub.L. No. 101–239, 103 Stat. 2106, 2399, effective for returns due after 1989. Negligence is now one component of the accuracy-related penalty found in § 6662(b).

defined under the statute, but § 6653 instructs that negligence "includes any failure to make a reasonable attempt to comply with the provisions of this title, and the term 'disregard' includes any careless, reckless, or intentional disregard." Section 6653(a)(3). The Tax Court and appellate courts have defined negligence under the statute as "lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances." *E.g., Marcello v. Commissioner,* 380 F.2d 499, 506 (5th Cir.1967); [5] *Neely v. Commissioner,* 85 T.C. 934, 947, 1985 WL 15422 (1985) (quoting *Marcello* ).

■ Defendant's motion for summary judgment with respect to the negligence penalty is DENIED for the reasons discussed more fully in the hearing before the court on February 7, 2000. Among other reasons, the court finds that material issues of fact remain in dispute and that Defendant, as the movant for summary judgment, thus has failed to meet its burden of showing that no issue of material fact exists and that it is entitled to judgment as a matter of law.[6] There are facts here from which Plaintiffs can be found non-negligent.

Although the parties believe that the disallowance occurred because the Service contended that the machines were not used in a trade or business, the Tax Court made no such finding, and on this record that fact is in dispute. The issue is whether the taxpayer was negligent in claiming the benefits that flowed from his investment on his tax returns when they were filed. It is a context sensitive inquiry which cannot even be undertaken until the offended rule or regulation is identified. Even if the court were to assume the identity of the rule, there is a dispute of fact here about the negligence, if any, of the taxpayers in view of what they did know or believe at the time the returns were filed.

The prospectus is dated November 24, 1982, Masters started its business on December 29, 1982, and Plaintiffs purchased their interest in Masters in December 1982. Masters filed its first tax return on February 7, 1983 and reported no revenues for 1982, but apparently, it did generate $325,000 in gross receipts in 1983 and $975,000 in both 1984 and 1985. In light of these facts, the court cannot conclude as a matter of law that Plaintiffs were negligent in not determining that Masters lacked a profit motive and in therefore claiming benefits flowing from a start-up company in the first year and in subsequent years, especially as Plaintiffs had investigated and invested in that business just two months prior to its first tax return and as the record reveals that the compa-

**5.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981)(en banc), the Eleventh Circuit adopted as binding precedent all decisions that the former Fifth Circuit rendered prior to October 1, 1981.

**6.** *See, e.g., Onderdonk v. Commissioner,* 48 T.C.M.(CCH) 23, 1984 WL 14513 (1984), *aff'd,* 755 F.2d 929 (4th Cir.1985) (delineating Commissioner's, as the movant, burden at summary judgment and taxpayer's burden of proof regarding the negligence penalty). While the taxpayer ultimately bears the burden of proof with respect to the addition to tax for negligence, *see id.,* the government first must meet its burden as the party moving for summary judgment in order to prevail at this stage. *See also Estate of Ravetti v. Commissioner,* 66 T.C.M. (CCH) 688, 1993 WL 347424 (1993), *aff'd,* 38 F.3d 1218 (9th Cir. 1994) (noting that motion for summary judgment will be denied if any reasonable doubt exists as to facts at issue); *Randle v. Commissioner,* 56 T.C.M. (CCH) 933, 1988 WL 137119 (1988); *Beard v. Commissioner,* 82 T.C. 766, 1984 WL 15573, (1984). *But see Klein v. United States,* 94 F.Supp.2d 838, 843 (E.D.Mich.2000) (stating that burden under § 6653 at summary judgment is on the taxpayer to demonstrate that there is some evidence by which a reasonable trier of fact could conclude that he was not negligent).

ny was generating revenues, at least in some form, in the immediately succeeding three years. In addition, after reviewing the prospectus, the court finds nothing that indicates categorically that Masters did not have a profit motive.[7] Thus, the court finds that a material question of fact remains as to whether Plaintiffs were negligent in claiming the tax benefits on their returns.

In addition, the court feels compelled to address several other issues relevant to its determination that material issues of fact remain that preclude a grant of summary judgment. First, the court notes that both parties focus their arguments on Plaintiffs' alleged negligence in relying on the advice that they received from their experts with respect to **investing** in Masters. However, as there is no evidence in the record that these experts advised or assisted Plaintiffs in **preparing** their tax returns for the relevant years, this court finds that the advice that Plaintiffs received from these experts is, at most, tangentially relevant. Instead, the court believes that the germane inquiry is whether Plaintiffs were negligent in claiming the tax benefits **at the time they filed their return(s)**. To this end, the court emphasizes the fact that the statute requires that the taxpayer be negligent with respect to the tax **required to be shown on the tax return** and not in actually making an investment prior to the time he claims the benefits which flow therefrom. *See* § 6653(a)(1). As discussed above, material issues of fact remain as to whether Plaintiffs were negligent in claiming the tax benefits at issue on their tax returns.

Second, Defendant contends that Plaintiffs should have known that the recyclers were **overvalued** because of the numerous warnings in the offering memorandum and

because none of his advisers could attest to the valuation of the recyclers. However, as it admitted in the pre-hearing memorandum and at oral arguments before this court, the IRS did not disallow Plaintiffs' deductions and credits based on the fact that the machines were **overvalued**. Rather, the IRS made such disallowances because it determined that Masters did not engage in a **trade or business or in a profit making activity**. The court finds that the determination that the partnership lacks a profit motive is wholly different from a determination that the recyclers have absolutely zero value. In fact, in its pre-hearing memorandum, Defendant admits that the recyclers have some value and that an overvaluation of the machines was not the basis for the disallowance of Plaintiffs' claimed tax benefits. Accordingly, Defendant's vehement arguments that Plaintiffs should have known that the machines were overvalued are irrelevant to the determination that Plaintiffs were negligent in claiming the disputed tax benefits because they should have known that the Masters recyclers were not engaged in a trade or business or in an activity for profit.

Finally, Defendant's arguments that Plaintiffs should have been alerted by the red flags in the offering memorandum, including the circular financing structure, the numerous conflicts of interest, and the fact that the investment seemed too good to be true, amount to arguments that Plaintiffs should have known that Masters was a sham transaction. The inquiry for purposes of whether a transaction is a sham is whether the transaction has any practicable economic effects other than the generation of income tax losses or deductions. *See Karr v. Commissioner*, 924 F.2d

---

7. The court further notes that the record reflects that the primary concern expressed by Plaintiffs' experts related to the **valuation** of the machines and not to whether Masters was engaged in the business for **profit**.

1018, 1022 (11th Cir.1991); *Kirchman v. Commissioner*, 862 F.2d 1486, 1490–92 (11th Cir.1989) (discussing sham transaction doctrine); *see also Ferguson v. Commissioner*, 29 F.3d 98, 101 (2d Cir.1994); *Pasternak v. Commissioner*, 990 F.2d 893, 898 (6th Cir.1993). In other words, the inquiry is whether the transaction is devoid of economic substance other than the creation of tax benefits. *Karr*, 924 F.2d at 1022–23; *Kirchman*, 862 F.2d at 1492.[8] While in the instant action, Defendant asserts that the disallowances were made because the IRS determined that Masters was not engaged in a trade or business or in an activity for profit, many of Defendant's arguments seem to contend that the partnership was a sham transaction. Yet, again, there is no evidence in the record that the Tax Court determined that the Masters limited partnership lacked economic substance.

Because this court finds that material issues of fact remain as to whether Plaintiffs were negligent under § 6653, Defendant's motion for summary judgment is DENIED as to this issue.

## B. Valuation Overstatement Penalty

Former § 6659[9] imposed a graduated tax for underpayment of taxes attributable to overvaluation of assets by 150 percent or more. Section 6659(b-c). Although Masters reported the basis of the property eligible for tax credits (the recyclers) as $7,000,000, the Tax Court readjusted the basis to zero. As partners in Masters, Plaintiffs are bound by these determinations. 26 U.S.C. § 6226(c); *Kaplan v. United States*, 133 F.3d 469, 471 (7th Cir.

1998). Accordingly, Plaintiffs overstated the value of their interest in the partnership by more than 250 percent. *See* § 6659(b) (delineating that for valuation overstatements of more than 250 percent, the applicable percentage is 30).

Although the Eleventh Circuit has not addressed the issue, the Fifth Circuit has held that a total disallowance of deductions or credits flowing from an investment is not attributable to a valuation overstatement but to claiming an improper deduction or credit. *Heasley v. Commissioner*, 902 F.2d 380, 383 (5th Cir.1990); *Todd v. Commissioner*, 862 F.2d 540 (5th Cir. 1988). In contrast, the majority of appellate courts that have addressed this issue expressly have disagreed with the view of the Fifth Circuit when deductions have been disallowed because the transaction lacked economic substance. *See Merino v. Commissioner*, 196 F.3d 147, 158–59 (3d Cir.1999); *Zfass v. Commissioner*, 118 F.3d 184, 190 (4th Cir.1997); *Illes v. Commissioner*, 982 F.2d 163, 167 (6th Cir. 1992); *Gilman v. Commissioner*, 933 F.2d 143, 151–52 (2d Cir.1991); *Massengill v. Commissioner*, 876 F.2d 616, 619–20 (8th Cir.1989). Of course, in each of these cases, there had been an adjudication and/or an admission by the taxpayer that the transaction lacked economic substance. As discussed in Part II(A) above, there has been no such adjudication in the instant case.

 This section also provides that the Commissioner has the authority to waive all or any part of this penalty upon a showing by the taxpayer (1) that there was

---

**8.** Pursuant to Eleventh Circuit precedent, the determination as to whether a transaction is a sham precedes an inquiry as to whether the transaction arises in or is connected with a trade or business or is an activity engaged in for profit. *Karr*, 924 F.2d at 1022; *Kirchman*, 862 F.2d at 1491.

**9.** Section 6659 also was repealed by § 7721 of the Omnibus Budget Reconciliation Act of 1989. *See* Pub.L. No. 101–239, 103 Stat. 2106, 2399 (1989) (effective for tax returns due after 1989). As with negligence, any substantial valuation misstatement is now one component of the accuracy-related penalty found in § 6662(b).

a reasonable basis for the valuation claimed on the tax return and (2) that such claim was made in good faith. Section 6659(e). The Commissioner's refusal to waive this penalty is reviewable for abuse of discretion. *Merino v. Commissioner*, 196 F.3d 147, 159 (3d Cir.1999); *Krause v. Commissioner*, 99 T.C. 132, 179, 1992 WL 178601 (1992). Although Defendant moved for summary judgment on Plaintiffs' claim regarding the penalty assessed under § 6659, Plaintiffs have not addressed this specific ground for summary judgment in their response to Defendant's motion, apparently assuming that if they succeeded in creating an issue for trial on the issue of negligence that they would have preserved an issue for trial regarding the presence of a reasonable or good faith basis for their overvaluation of the recyclers. As discussed above, Defendant admits that the recyclers were not valueless and that the readjustments were based on Masters' lack of profit motive. In addition, no court has found that Masters failed to engage in a trade or business (or, for that matter, that the transactions lacked economic substance); rather, the Tax Court endorsed a settlement entered into between Winer and the IRS. Accordingly, the court finds that a material issue of fact remains as to whether Plaintiffs have made the required showing under

§ 6659 that would demonstrate that the Commissioner abused his discretion in refusing to set aside the valuation overstatement penalty. Defendant's motion for summary judgment therefore is DENIED as to this issue.

### C. Refund of Penalty Rate of Interest

■ Former § 6621(c) [10] instructs that, for "any substantial underpayment attributable to tax motivated transactions, the rate of interest . . . **shall be** 120 percent of the underpayment rate established under this section." (Emphasis added). A tax-motivated transaction is defined to include, among other things, "any valuation overstatement (within the meaning of section 6659(c))" and "any sham or fraudulent transaction." Section 6621(c)(3)(A). [11] Again, Plaintiffs have presented no response to Defendant's motion for summary judgment on this specific issue. However, the court notes that although the language of § 6621(c) provides for a mandatory imposition of the penalty rate of interest, this court found in Part II(B) above that it could not find as a matter of law that a valuation overstatement pursuant to § 6659 had occurred. In addition, there has been no adjudication that Masters was engaged in a tax-motivated transaction

---

**10.** This subsection originally was designated as § 6621(d) when added to the Tax Code in the Deficit Reduction Act of 1984. *See* Pub.L. No. 98–369, 98 Stat. 494, 682 (1984). It was redesignated as § 6621(c) in the Tax Reform Act of 1986, *see* Pub.L. No. 99–514, 100 Stat. 2085, 2744 (1986), and was repealed by § 7721 of the Omnibus Budget Reconciliation Act of 1989, *see* Pub.L. No. 101–239, 103 Stat. 2106, 2399 (1989), effective for tax returns due after 1989.

**11.** Former § 6621(c)(3) provided for the imposition of a penalty for any substantial underpayment of tax attributable to a tax motivated transaction and defined a tax motivated transaction as:

(i) any valuation overstatement (within the meaning of section 6659(c)),

(ii) any loss disallowed by reason of section 465(a) and any credit disallowed under section 46(c)(8),

(iii) any straddle (as defined in section 1092(c) without regard to subsections (d) and (e) of section 1092),

(iv) any use of an accounting method specified in regulations prescribed by the Secretary as a use which may result in a substantial distortion of income for any period, and

(v) any sham or fraudulent transaction.

within the meaning of 26 U.S.C. § 6621(c)(3). Rather, as discussed previously, there is no finding by the Tax Court of a basis for the readjustment of the partnership items. Accordingly, this court cannot determine as a matter of law that Plaintiffs are liable under § 6221 as there is a material issue of fact remaining as to whether the Masters recycling partnership was a tax motivated transaction. Defendant's motion for summary judgment is DENIED as to this issue.

## D. Abatement

Plaintiffs do not counter Defendant's assertion that no other issues remain with respect to 1984 and 1985 and that Plaintiffs are not entitled to any further refund for those years because (1) no penalties were assessed for those years on account of Plaintiffs' investment in Masters and (2) the small assessments have been abated and Plaintiffs have received refunds for those years. Instead, Plaintiffs altogether have failed to address this issue in his response to Defendant's motion for summary judgment. Because Plaintiffs have admitted that with respect to their federal income tax liability for 1984 and 1985, the IRS assessed no negligence or overvaluation penalties on account of their investment in Masters Recycling and abated the tax and interest assessed on account of the investment, the court finds that no issues remain to be tried with respect to years 1984 and 1985. Defendant's motion for summary judgment is GRANTED as to this issue.

## III. Conclusion

In accordance with the foregoing, Defendant's motions to supplement [35, 43] are GRANTED. Defendant's motion for summary judgment [33–1] is GRANTED IN PART AND DENIED IN PART. Defendant's motion is DENIED with respect to its claims under §§ 6653, 6659, and 6621. Defendant's motion is GRANTED with re-

spect to the issue of abatement for years 1984 and 1985. The parties are DIRECTED to file a consolidated pretrial order within thirty (30) days of receipt of this Order.